In re John Thomas PAPPAS, Debtor.

FEDERAL DEPOSIT INSURANCE CORPORATION, Appellant,

v.

John Thomas PAPPAS, Appellee.

No. C89–0156J.

United States District Court, D. Wyoming.

Oct. 19, 1989.

James R. Belcher and Lawrence J. Wolfe, Holland & Hart, Cheyenne, Wyo., for creditor-appellant.

Ken McCartney, Cheyenne, Wyo. and Patrick J. Murphy, Casper, Wyo., for debtor.

## MEMORANDUM OPINION AND ORDER

ALAN B. JOHNSON, District Judge.

The creditor-appellant Federal Deposit Insurance Corporation (FDIC) appeals from an order of the bankruptcy court entered on April 17, 1989, requiring that the FDIC pay $40 an hour to the debtor-appellee John Thomas Pappas for the time he spends cooperating with his malpractice carrier's attorney. The FDIC is suing Pappas for legal malpractice in connection with legal advice he provided to the Yellowstone State Bank of Lander, Wyoming. Pappas has moved to dismiss the appeal as untimely. Alternatively, he argues the court should affirm the order on the ground that it was within the bankruptcy court's discretion to require the FDIC to compensate him as a condition to obtaining relief from the post-discharge permanent injunction imposed by the Bankruptcy Code, 11 U.S.C. § 524.

Pappas, as an attorney, was a shareholder in and general counsel for the Yellowstone State Bank, which failed on November 1, 1985. The FDIC was then appointed receiver. In investigating why the bank failed, the FDIC determined that Pappas neglected to inform the bank that certain "insider" loans, which later became uncollectable, violated applicable banking laws. The FDIC alleges that the uncollectability of these insider loans was a major reason for the bank's failure, causing the bank to lose several million dollars.

The debtor filed a petition for Chapter 11 bankruptcy on March 14, 1986. The court approved the debtor's Chapter 11 reorganization plan and granted a discharge to him one year later on March 28, 1987. The discharge operated to dissolve the automatic stay and replaced it with the Bankruptcy Code's post-discharge permanent injunction. 11 U.S.C. § 362 and § 524(a)(2)

To establish legal malpractice liability against Pappas for the purpose of attaining recovery from his malpractice insurance policy, the FDIC moved to modify the permanent injunction imposed by 11 U.S.C. § 524. In granting the motion on November 12, 1987, the bankruptcy court allowed the FDIC to seek judgment against Pappas for the purpose of enforcing it only against his insurance carrier. In its order, however, the court required the FDIC to indemnify Pappas for his actual costs and expenses incurred in the litigation.

After commencement of the FDIC's lawsuit in state court against him, Pappas moved the bankruptcy court for an order requiring that the FDIC also compensate him, as an attorney fee, for his time actually spent cooperating with his malpractice insurance carrier in defending the FDIC's lawsuit. The bankruptcy court partially granted the motion in order that the FDIC compensate the debtor at the rate of $40 an hour for time spent in defending the FDIC's lawsuit. The FDIC now seeks reversal of that order on the ground that the bankruptcy court erred as a matter of law in ordering the FDIC to compensate the debtor for his time.

As a preliminary matter going to this court's jurisdiction, the debtor argues that the appeal should be dismissed as untimely because the appellant's time to appeal began to run on November 10, 1987, when the bankruptcy court entered its first order modifying the injunction and requiring the FDIC to indemnify the debtor for his costs and expenses. A notice of appeal must be filed within ten days of the date of the entry of the judgment from which an appeal is taken. Fed.Bankr.R. 8002. Although the November 10, 1987, order did not require the FDIC to reimburse the debtor for his time expended in connection with the litigation, the debtor nevertheless argues that the time to file a notice of appeal began to run on this issue because it was foreseeable that costs and expenses would include his time expended on the FDIC litigation.

■ The November 10, 1987, order provides in relevant part "that the FDIC must indemnify the debtor from all costs and expenses, including attorney's fees, which the debtor incurs as a result of commencement and prosecution of such suit, to the extent that those costs and expenses are not the responsibility of the debtor's insurance carrier...." However, the April 17, 1989, Order from which the FDIC appeals, provides in relevant part as follows: "FDIC shall reimburse the debtor for all of his time reasonably spent in connection with the FDIC v. Pappas lawsuit.... at a rate of $40 an hour together with all actual necessary expenses incurred by the debtor...." In reading these two orders, the court finds that the first one required the FDIC to reimburse the debtor for money he spent or became obligated to pay in connection with the FDIC litigation. The second order required the FDIC to pay the debtor for time he expended in connection with the same litigation. Compensation for time spent was regarded as an attorney's fee as opposed to costs and expenses incurred. The orders are therefore distinct in that the expenses refer to either money spent or debt incurred, while attorney's fees refer to compensation for time spent. The bankruptcy court recognized the distinction when it stated in the second order "the FDIC shall reimburse the debtor for all of his time ... together with all actual necessary expenses incurred...."

The FDIC did not appeal the first order because it agreed to pay the debtor for his out of pocket expenses incurred in connection with its litigation. It objected, however, to having to pay the debtor for his time, which it was required to do under the April 17, 1989, order. The first order protected the debtor's assets while the second one required the FDIC to create assets by paying the debtor for his time. In this appeal, the FDIC is asking the court to rule that time is not property protected by the code, something the FDIC could not have done but for the second order. The court finds that the FDIC's appeal of that second order is therefore timely.

■ The FDIC filed suit in state court in an effort to establish that the debtor committed legal malpractice. If successful, the FDIC will enforce its judgment only against the debtor's insurance carrier. A discharge in bankruptcy operates as a permanent injunction against the commencement of a lawsuit to recover a pre-petition debt from the debtor. 11 U.S.C. § 524(a)(2). The injunction protects the debtor's property, which is broadly defined by the Bankruptcy Code. See 11 U.S.C. § 541. As correctly noted by the bankruptcy court this injunction does not necessarily bar a creditor from naming the debtor as a defendant in the lawsuit for the purpose of establishing the liability of a third person, such as the debtor's insurance carrier. See *Foust v. Munson Steamship Lines*, 299 U.S. 77, 84, 57 S.Ct. 90, 94, 81 L.Ed. 49 (1936) (holding that the automatic stay, which provides greater protection than the discharge injunction, does not bar a suit where the debtor is named only to establish the liability of a debtor's insurance carrier). Because the discharge injunction protects the debtor's property, the protection necessary to effectuate the Bankruptcy Code's policy of fresh start, the court, in granting the FDIC's motion to modify, properly exercised its discretion when it ordered the FDIC to indemnify the debtor for his costs and expenses incurred in the litigation. See 11 U.S.C. § 105(a) ("the court may issue any order ... that is necessary ... to carry out the provisions of the" Bankruptcy Code).

From this, the debtor argues that the court also exercised its discretion when it ordered that the FDIC compensate him for time spent on the litigation. According to the debtor, the court's order helps protect his fresh start and was therefore within the court's discretion. The debtor's argument, however, misconstrues the concept of fresh start, which is to ensure protection of the debtor's assets from execution to satisfy prepetition debt. The bankruptcy court ensured this protection and therefore respected the debtor's fresh start when it ordered that the FDIC reimburse the debtor his cost and expenses incurred in the litigation.

As the debtor recognizes, the FDIC may proceed against him provided three conditions are met: (1) Where it is necessary to join the debtor to establish liability against a third party; (2) a creditor pays the debtor's reasonable costs of defense, including legal fees and expenses, where those costs and expenses and fees are not borne by a third party; (3) the creditor may not execute on any judgment obtained in the litigation against the debtor personally or against his assets. *In re Cantania*, 94 B.R. 250, 253 (Bankr.D.Mass.1989); *see also In re Mann*, 58 B.R. 953, 958 (Bankr. W.D.Va.1986) (if these three conditions are met, "maintenance of the suit does not frustrate the policy of the bankruptcy code in giving the debtor a fresh start in his economic life."). Satisfaction of these conditions guarantee the debtor his fresh start, notwithstanding the litigation against him for a prepetition debt. *Id.* It is undisputed that the FDIC has satisfied these three conditions. In Wyoming it is necessary to establish the liability of an insured before insurer can be held liable. *See generally Morris v. Farmers Ins. Exchange*, 771 P.2d 1206 (Wyo.1989); *Mountain West Farm Bureau Mutual Ins. Co. v. Hallmark Ins. Co.*, 561 P.2d 706 (Wyo.1977). The other two conditions are met because the FDIC has already agreed to reimburse the debtor his reasonable costs of defense, including legal fees and expenses and it has agreed not to execute on any judgment it may obtain against Pappas either personally or against his assets.

Notwithstanding satisfaction of these three conditions, the debtor argues that the FDIC should pay him for his time because the lawsuit is consuming so much of his time that he is unable to engage in the practice of law. Without time to practice law, the debtor can have no post-petition earnings, which are, of course, protected by the Bankruptcy Code's fresh start. The bankruptcy court could order the FDIC to pay the debtor for his time only if time, like earnings and other post-petition assets, is in fact an asset.

An asset is anything upon which a creditor can levy. *In re Stegall*, 865 F.2d 140, 142 (7th Cir.1989) (time is not property because it is not a leviable asset). Time, on the other hand, is not something upon which a creditor may levy and is therefore not an asset protected by the Bankruptcy Code's permanent discharge injunction. *See generally Norwest Bank of Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 967, 99 L.Ed.2d 169 (1988) (time is not an asset). Despite this rule, the debtor argues that as a lawyer, time is his earnings and is therefore protected by the Code's fresh start. Of course everyone's time in some sense is one's earnings in that without time we cannot engage in activity that produces earnings. Although the Bankruptcy Code's fresh start policy guarantees protection of one's post-petition earnings, it does not guarantee creation of those earnings. In issuing its first order, the bankruptcy court gave all the protection to which the debtor was entitled: insulation of his post-petition assets, which included earnings realized from his practice of law.[1] In ordering the FDIC to compensate the debtor for his time spent in this litigation, the court in essence is requiring that the FDIC create assets for the debtor, an order that clearly goes beyond the bounds of the concept of fresh start. The court therefore finds that the bankruptcy court erred as a matter of law in requiring that the FDIC compensate the debtor for his time.

Accordingly, IT IS HEREBY ORDERED that the bankruptcy court's April 17, 1989, Order requiring that the FDIC compensate the debtor for his time spent in this litigation, be REVERSED.

---

1. Evidently the debtor is spending much time responding to numerous discovery requests, including the production of many documents. In this situation, the debtor's remedy would appear to be relief from the state district court, which would have the discretion to require that the FDIC tailor its discovery requests.