[No. B174899. Second Dist., Div. Four. May 6, 2005.]

HOLLY BOYER, Cross-complainant and Appellant, v.
RUSSELL JENSEN et al., Cross-defendants and Respondents.

## Counsel

Schimmel & Porter, Schimmel & Parks, Alan I. Schimmel and Michael W. Parks for Cross-complainant and Appellant.

Tharpe & Howell and Paul W. Burke for Cross-defendant and Respondent Russell Jensen.

Carroll, Burdick & McDonough, Jeffrey D. Lyddan, David M. Rice and Laurie J. Hepler for Cross-defendant and Respondent Valley Mechanical Services, L.P.

## Opinion

**CURRY, J.**—Appellant Holly Boyer appeals from a judgment in favor of respondents Russell Jensen and his employer Valley Mechanical Services, L.P. (Valley Mechanical) on her cross-complaint for injuries arising out of an automobile accident. Valley Mechanical was dismissed on statute of limitations grounds and Jensen was dismissed because he had been discharged in bankruptcy. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case derives from a motor vehicle accident that occurred in October 2000. The drivers involved were appellant[1] and Jensen. Jensen was employed by Valley Mechanical at the time.

On September 18, 2001, just short of one year after the accident occurred, Jensen brought suit against Boyer, alleging that her negligence caused the accident. Approximately five months later, on February 1, 2002, appellant cross-complained against Jensen, accusing him of negligence. There was no reference in the cross-complaint to Jensen acting as anyone's agent or in the course and scope of his employment. During discovery, appellant obtained information that indicated Jensen, who was driving his own car, may have been engaged in job-related travel when the accident occurred. On August 15, 2002, appellant amended her cross-complaint to add Valley Mechanical as Doe No. 1. Valley Mechanical answered and raised the statute of limitations as an affirmative defense.

The case was proceeding towards trial when, in March 2003, Jensen filed for bankruptcy protection and obtained an automatic stay. The bankruptcy court issued a discharge, and in late 2003, he filed a motion to dismiss the underlying litigation due to bankruptcy discharge. His motion, supported by a declaration and exhibits, contended appellant had never petitioned the bankruptcy court for relief from stay and that Jensen's "entire [insurance] policy [had] been tendered to and accepted by [appellant] in exchange for a covenant not to execute against [Jensen's] insurance company, Penn American."

In the letter discussing payment from Penn American, counsel for Jensen and appellant "[a]cknowledged and agreed": "[T]his does not, in any way, limit or otherwise impair [appellant's] right to prosecute her claims, to secure a judgment in this case, and/or to pursue satisfaction of that judgment from Jensen's employers and/or any insurers (other than Penn American)." In an earlier letter, counsel for appellant had said: "As authorized and explained in [*Forsyth v. Jones* (1997) 57 Cal.App.4th 776 [67 Cal.Rptr.2d 357]], Mr. Jensen's name will remain in the case in order to pursue payment from other insurers and/or the employers so there will be no release of claims."

While Jensen's motion to dismiss was pending, Valley Mechanical submitted a separate motion for judgment on the pleadings. Valley Mechanical argued that it was clear from the face of the pleadings that the claim against it

---

[1] Appellant was pregnant at the time of the accident. Her daughter, Alexandra, filed a separate action against respondents for injuries allegedly incurred in utero. That action is not involved in this appeal.

was barred by the applicable one-year statute of limitations since the accident occurred in October 2000, appellant's original cross-complaint was not filed until February 2002, and Valley Mechanical was not added as a Doe defendant until August 2002.

In opposition to Jensen's motion, appellant argued that "all remedies, through entry of judgment, can be pursued in the name of a discharged, bankrupt tortfeasor, in order to pursue any and all recovery against any third parties who are obligated to guarantee or satisfy the judgment obtained in name against the tortfeasor," and that she was seeking a judgment against Jensen in order to proceed against his employer, Valley Mechanical, and/or its insurer. In opposition to Valley Mechanical's motion, appellant argued that because the action against Jensen was timely due to Jensen's status as plaintiff, and Valley Mechanical was potentially liable under a theory of respondeat superior, the action against Valley Mechanical must be deemed timely.

At the time the oppositions to the defense motions were filed, appellant moved for leave to file a first amended cross-complaint in order to make new allegations. These allegations included that Jensen was operating his motor vehicle "in the course and scope of employment [with Valley Mechanical]" and that appellant "was genuinely ignorant and unaware of the identity of Valley [Mechanical], Jensen's operation of his motor vehicle in the course and scope of employment, the existence of a theory of respondeat superior/vicarious liability as against Valley [Mechanical] or the fact that Jensen was an employee at the time of the accident."

One day before the hearing on the motion for judgment on the pleadings, appellant sought, ex parte, to have the hearing on Jensen's motion to dismiss and Valley Mechanical's motion for judgment on the pleadings set for the later date on which her motion for leave to amend had been calendared. The ex parte motion was denied and the hearing took place as scheduled on January 21, 2004. On the record, the court stated that Jensen's motion was to be taken under submission and Valley Mechanical's motion granted. In accordance with the court's decision, Valley Mechanical served a notice of ruling that stated its motion had been granted. However, the minute order entered on January 21 said that Jensen's motion for dismissal had been submitted and Valley Mechanical's motion for judgment on the pleadings had been *denied.*

A month later, on February 23, appellant's motion for leave to amend the cross-complaint came on for hearing. The only appearance noted on the record was counsel for appellant. The court inquired whether the prior motions had been denied or taken under submission. Before counsel could

finish his response, the court reviewed its file and drew the conclusion from the January 21 minute order that the motion for judgment on the pleadings had been denied. The court's minute order dated February 23 stated that (1) appellant's motion for leave to amend was granted; (2) Jensen's motion to dismiss was denied; and (3) Valley Mechanical's motion for judgment on the pleadings was denied. Appellant's counsel served a notice of ruling that mirrored the minute order.

Once it received appellant's notice of ruling, Valley Mechanical filed a motion to "correct the clerical errors." The motion was set for hearing on April 12. Jensen scheduled a hearing on a motion for reconsideration of the motion denying his motion to dismiss for the same date. Jensen argued that the grant of Valley Mechanical's motion for judgment on the pleadings was a new fact that justified reconsideration of the denial of the motion to dismiss.

On April 13, the court entered a minute order that stated Valley Mechanical's motion for order correcting the clerical error was granted and Jensen's motion to dismiss was granted. On April 19, the court entered a minute order setting aside its April 13 minute order. On April 20, the court issued a minute order which stated: "After considering all the materials filed in this case, the Court reinstates its ruling of 04-13-04 as follows: [¶] The minute order for 01-21-04 indicating the Court denied the motion for Judgment on the Pleading was in error as the Court actually granted the motion. [¶] Jensen's motion to dismiss is granted based upon the corrected minute order. [¶] [Appellant's] motion to file a first amended complaint is denied as it was granted based upon the incorrect 01-21-04 minute order."

On April 22, 2004, appellant filed a notice of appeal from the "[o]rder of dismissal on April 13, 2004, and preceding orders of February 23, 2004, January 21, 2004, and January 20, 2004, regarding motion to dismiss, motion for judgment on the pleadings, motion for reconsideration, and motion for leave to file an amended and/or supplemental cross-complaint . . . ."[2]

Subsequently, (1) in May 2004, the court signed a separate order granting Valley Mechanical's motion for judgment on the pleadings, and Valley Mechanical served a notice of entry of order; (2) in July 2004, a judgment of dismissal was entered in favor of Jensen; and (3) in August 2004, a notice of entry of judgment of dismissal was served by appellant. A second notice of appeal was filed on behalf of appellant on September 27, 2004, from the judgment of dismissal. That led to the opening of a second file bearing case No. B178453 that was subsequently dismissed for failure to designate a record.

---

[2] Respondent Jensen's brief erroneously states that a notice of appeal was filed on April 13, 2004. Two notices of appeal were filed, neither dated April 13, 2004.

## DISCUSSION

### I

██ We first deal with the procedural issue of whether the current appeal was premature. The notice of appeal filed on April 22, 2004, after entry of the minute order, was followed by a separate order granting Valley Mechanical's motion for judgment on the pleadings and a judgment of dismissal in favor of Jensen. Generally, Courts of Appeal strictly adhere to the one final judgment rule. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1989) ¶ 2:262, pp. 2-120–122 (rev. # 1, 2004).) But we have discretion to entertain a premature appeal as long as a judgment was actually entered, there is no doubt concerning which ruling appellant seeks to have reviewed, and respondents were not misled to their prejudice. (See, e.g., *Forsyth v. Jones, supra,* 57 Cal.App.4th at p. 780.) Given the confused state of the underlying record in this matter, we do not believe any purpose would be served by penalizing appellant for taking a premature appeal. Nor do we see any evidence that respondents were prejudiced or misled. Accordingly, our discretion is exercised in favor of hearing the matter on the merits.

### II

We turn to the question of whether Valley Mechanical's motion for judgment on the pleadings was properly granted.

██ It is clear from the pleadings that the injury-causing accident occurred in October 2000. Former Code of Civil Procedure section 340, subdivision (c), applied a one-year statute of limitations to actions for injury caused by the wrongful act or neglect to another.[3] Jensen's complaint against appellant was filed in September 2001, just within the deadline. Appellant's cross-complaint was filed in 2002. Thus, unless some exception applies, her claims were necessarily time-barred.

██ With regard to appellant's claims against Jensen, the filing of his complaint caused the statute of limitations to be tolled or suspended as to causes of action arising out of the same set of facts alleged in the complaint. (*Sidney v. Superior Court* (1988) 198 Cal.App.3d 710 [244 Cal.Rptr. 31].)

---

[3] Former Code of Civil Procedure section 340, subdivision (c), was amended in 2002 to delete reference to these types of claims. (See Stats. 2002, ch. 448, § 3.) Actions for "injury to . . . an individual caused by the wrongful act or neglect to another" are now covered by section 335.1 of the Code of Civil Procedure, which specifies a two-year statute of limitations. The new statute does not apply to appellant's claims since legislative enlargement of a limitation period operates prospectively unless the statute expressly provides otherwise. (See, e.g., *In re Marriage of Sweeney* (1999) 76 Cal.App.4th 343, 347 [90 Cal.Rptr.2d 298].)

The principle underlying the rule is that " ' "*the plaintiff* has [by filing the complaint] thereby waived the [statute of limitations] claim and permitted the defendant to make all proper defenses to the cause of action pleaded." ' " (*Id.* at pp. 714–715, quoting *Trindade v. Superior Court* (1973) 29 Cal.App.3d 857, 859–860 [106 Cal.Rptr. 48], italics added.) Since new parties cannot be said to have engaged in any sort of waiver, the rule does not apply to them. (See, e.g., *Trindade v. Superior Court, supra,* at p. 859 ["As to cross-actions against . . . codefendants or new parties it has regularly been held that the statute of limitations is not tolled by the commencement of the plaintiff's action. [Citations.]"].) The rationale for this distinction was discussed in *Western etc. Co. v. Tuolumne etc. Corp.* (1944) 63 Cal.App.2d 21, 31 [146 P.2d 61], where the court stated: "The principle underlying the rule that a statute of limitations is suspended by the filing of the original complaint is that the plaintiff has thereby waived the claim and permitted the defendant to make all proper defenses to the cause of action pleaded. But, where the controversy is limited to cross-defendants, none of whom has done any act in the nature of a waiver the reason for the rule does not exist."

Appellant advances the theory that, because Valley Mechanical is Jensen's employer and potentially liable under principles of respondeat superior, its statute of limitations defense should be tied to Jensen's. That is, since Jensen waived the statute of limitations defense by asserting a claim against appellant, Valley Mechanical should not be able to assert the defense because of its status as his potentially vicariously liable employer. Appellant cites no authority that supports this novel proposition. She attempts to rely on this court's decision in *Massa v. Southern Cal. Rapid Transit Dist.* (1996) 43 Cal.App.4th 1217 [51 Cal.Rptr.2d 164], a case that arose in a wholly different factual and legal setting. The plaintiff there claimed to have suffered injury at the hands of a police officer employed by the Southern California Rapid Transit District (SCRTD) police. Claims against the SCRTD, a governmental entity, fell under provisions of the Tort Claims Act, which required written notice of claim to be given to the entity; and permitted suit to be filed within six months after the claim was denied, even though that date was more than one year after the cause of action arose. The issue presented in *Massa* was whether the plaintiff's claim against the individual officer should be subject to the same limitations period, or whether the more general provisions of former section 340 of the Code of Civil Procedure applied.

To resolve the issue, we relied on: (1) the "familiar postulates" that the more recently enacted law will prevail over an earlier one and that a specific statute relating to a particular subject will govern over a general one; (2) "the plain language of the [Tort Claims Act]"; and (3) "the legislative purpose of providing a parallel scheme for suing government entities and their employees" evidenced in the act. (*Massa v. Southern Cal. Rapid Transit Dist., supra,*

43 Cal.App.4th at p. 1221.) After review of the relevant statutes, the legislative history, and a leading treatise on the act, we concluded: "[T]he legislative intent was to maintain a consistency between governmental entities and employees. [¶] This consistency is achieved by applying the same statute of limitations bar to suits against a government employee for conduct within the course and scope of employment as applies to suits against the employing entity on the theory of respondeat superior culpability based on the employee's negligence. It would be defeated by applying a different period of limitation." (*Id.* at p. 1223.)

Appellant attempts to convince us that our holding in *Massa* has some relevance to the present situation. We do not see a connection. In *Massa*, both the employer and the employee had been named as defendants within the Tort Claims Act's limitations period. The issue was whether that period or the more general limitations period contained in the Code of Civil Procedure should be applied to the employee. Here, Valley Mechanical was not sued within the bounds of any arguably applicable limitations period. Appellant concedes it was named outside the period specified in former Code of Civil Procedure section 340, subdivision (c).

Nor does appellant identify any other exception that might apply. She attempts an equitable argument, asserting that the principle of avoiding stale claims does not apply in this case and that Valley Mechanical should have foreseen a potential respondeat superior claim and was not prejudiced. Application of the statute of limitations defense, unlike the equitable doctrine of laches, requires no showing of prejudice. (*Castro v. Sacramento County Fire Protection Dist.* (1996) 47 Cal.App.4th 927, 933 [55 Cal.Rptr.2d 193].) Statutes of limitations are " ' " 'adamant rather than flexible in nature' " and are " 'upheld and enforced regardless of personal hardship.' " ' " (*Id.* at p. 930, quoting *Kupka v. Board of Administration* (1981) 122 Cal.App.3d 791, 794–795 [176 Cal.Rptr. 214].) Appellant's claim against Valley Mechanical was filed outside the applicable limitations period and was, therefore, untimely. We turn to whether Valley Mechanical and/or its insurer could be pursued indirectly by continuation of the action against Jensen.

### III

Appellant contends that her claim against Jensen should not have been dismissed because bankruptcy discharge does not prevent litigation against the debtor from going forward where the claimant ultimately intends to obtain recovery from a third party. The third parties appellant has in mind are Valley Mechanical and/or its insurer. To support her argument, appellant

relies primarily on *Forsyth v. Jones, supra,* 57 Cal.App.4th 776. We first address whether that case is controlling.

### A

■ In *Forsyth,* plaintiff's claim for medical malpractice was dismissed after his physician obtained a bankruptcy discharge. Plaintiff's complaint expressly asserted that the purpose of the action was to establish the physician's liability as a precondition to recovering from his liability insurer. Addressing the "narrow issue" of whether "a plaintiff [may] proceed against a discharged debtor solely to recover from the debtor's insurer," the court "join[ed] the vast majority of courts who have considered the issue by answering that question in the affirmative." (*Forsyth v. Jones, supra,* 57 Cal.App.4th at p. 780.) Citing a number of federal cases,[4] the court stated: "[I]t is clear that, following discharge, a plaintiff or other creditor may not seek to hold the debtor personally liable for any debt, but may proceed against either a codebtor or a surety or guarantor who guaranteed the debtor's payment of that debt." (*Forsyth,* at p. 781.)

Appellant claims that her situation is on all fours with that in *Forsyth,* but that is obviously not so. Plaintiff in *Forsyth* was seeking to recover from the debtor's insurer. That situation is governed by Insurance Code section 11580, subdivision (b), which states that insurance policies sold in California must contain the following provisions: "(1) A provision that the insolvency or bankruptcy of the insured will not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy" and "(2) A provision that whenever judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

■ Procedure under Insurance Code section 11580 requires the injured party to bring two lawsuits to collect a judgment from the liability insurer: first against the insured and then, after judgment is obtained in the first suit, a separate action against the insurer. (*Rose v. Royal Ins. Co.* (1991) 2 Cal.App.4th 709, 718 [3 Cal.Rptr.2d 483].) It is well established that " 'the insured's liability must be established independently and not in an action brought directly against the insurer *and the insurer may not be joined in the*

---

[4] The court cited *Green v. Welsh* (2d Cir. 1992) 956 F.2d 30, *Matter of Edgeworth* (5th Cir. 1993) 993 F.2d 51, *Matter of Hendrix* (7th Cir. 1993) 986 F.2d 195, and *In re Jet Florida Systems, Inc.* (11th Cir. 1989) 883 F.2d 970. Each of those cases involved the same factual scenario as in *Forsyth*—a suit against the debtor intended to reach the debtor's insurer.

*action against the insured.*' " (*Ibid.*, italics added, quoting *Zahn v. Canadian Indem. Co.* (1976) 57 Cal.App.3d 509, 514 [129 Cal.Rptr. 286].) It is only after obtaining a judgment against the insured that the injured party's independent cause of action against the insurer arises. (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 68 [131 Cal.Rptr.2d 777].) At that point, the injured party " 'may proceed directly against any liability insurance covering the defendant, and obtain satisfaction of the judgment up to the amount of the policy limits.' " (*Ibid.*)

■ Appellant cites Labor Code section 2802 in an attempt to convince us that a similar procedure is triggered when an injured party seeks to hold an employer liable under a theory of respondeat superior. Section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer . . . ." There are significant differences between an insurer and an employer/indemnitor. For example, "[u]nlike an insurer, the employer need not defend whenever there is a mere potential for liability." (*Jacobus v. Krambo Corp.* (2000) 78 Cal.App.4th 1096, 1100 [93 Cal.Rptr.2d 425]; see also *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1282 [87 Cal.Rptr.2d 497] ["Insurers have a distinct and free-standing duty to defend their insureds [citation] as opposed to indemnitors, whose duty to defend is not triggered until it is determined that the proceeding against the indemnitee is 'embraced by the indemnity.' "]) In addition, insurers agree to compensate the insured for the consequences of his or her own negligence, whereas indemnitors generally do not. (See *Mel Clayton Ford v. Ford Motor Co.* (2002) 104 Cal.App.4th 46, 56, and 59–60 [127 Cal.Rptr.2d 759].) More importantly, Labor Code section 2802 does not mandate that an action by an injured first party must first be brought against the employee or that third parties may pursue the employer only after obtaining a judgment against the employee.

With respect to appellant's apparent intent to use a judgment in Jensen's name to recover from Valley Mechanical's insurer, several cases have interpreted section 2802 as creating no rights between employees sued by an injured third party and the employer's insurance company. In *Republic Indemnity Co. v. Schofield* (1995) 47 Cal.App.4th 220 [54 Cal.Rptr.2d 637], the employees of a professional law corporation sought to sue the corporation's insurer for bad faith and failure to defend, contending that "Labor Code section 2802 creates an implication that all employees of a corporation are 'insureds' under a policy that names the corporation as the sole insured." (*Id.* at p. 226.) The court "fail[ed] to see how this indemnification provision creates an implication that all corporate employees are automatically 'insureds' under a policy naming only the corporation as the insured. It is true

the insurer may have to indemnify the corporation to the extent it is legally liable for losses its employees suffer. However, this does not mean the employees are 'insureds' under the policy for the purpose of maintaining a breach of contract or bad faith action against the insurer." (*Id.* at p. 227.)

This court relied on the holding in *Republic* in *Seretti v. Superior Nat. Ins. Co.* (1999) 71 Cal.App.4th 920 [84 Cal.Rptr.2d 315], where the individual owners of a corporation sued its workers' compensation carrier for bad faith for failing to defend actions brought as the result of injury to two of the corporation's employees. We concluded that the owners lacked standing to assert a claim against the corporation's insurer. When and if the individual owners "assert[ed] an indemnification claim against the insured [employer/corporation], then that claim could be tendered to [the corporation's insurance company]." (*Id.* at p. 934.)

In *Seretti*, we cited *Alex Robertson Co. v. Imperial Casualty & Indemnity Co.* (1992) 8 Cal.App.4th 338 [10 Cal.Rptr.2d 165]. That case involved an agreement between a contractor and an architectural firm to provide architectural plans and specifications. The architectural firm was to indemnify the contractor for its negligence, and carry professional liability insurance. When the contractor was sued for breach of contract and negligence in connection with the project, he tendered the defense to the architectural firm's insurer and brought suit when the tender was rejected. The appellate court concluded that the contractor had "sued the wrong party." (*Id.* at p. 347.) "Its indemnity agreement is with [the architectural firm], not with [its insurer]. . . . [¶] . . . [¶] Under the policy, [the insurer] agreed to pay 'on behalf of [the architectural firm] all sums which [the architectural firm] shall become legally obligated to pay . . . by reason of liability arising out of any negligent act . . . in rendering or failing to render professional services . . . .' [The architectural firm] has not yet become legally obligated to pay anything. Until such event, any claim by [the contractor] against [the insurer] under the policy is premature." (*Ibid.*)

■ The above authorities make clear that even where a party is legally obligated to indemnify a second party, the first party's insurer is not the insurer of the second. Labor Code section 2802's provisions, like the provisions in the agreement in *Alex Robertson*, promise the employee he will be indemnified by the employer. They do not provide access to the employer's or its insurer's pocketbook through a third party suit against the employee. Accordingly, *Forsyth* and the federal authorities on which it relied are not controlling. We turn to consideration of whether the holding should be expanded to apply to the present situation.

*B*

Although neither party discusses them, a number of bankruptcy courts have considered whether to apply the holding of the federal authorities cited in *Forsyth* to situations where the plaintiff seeks to pursue the debtor's employer or an insurer other than the debtor's own. For example, in *In re Catania* (Bankr. D.Mass. 1989) 94 B.R. 250, the debtor allegedly caused injuries to plaintiff by negligently operating a motor vehicle owned by his employer which was covered by the employer's insurance. The court concluded that plaintiff could proceed, but set forth three conditions that should be present: "First, the movant can maintain the action against the debtor only when it is necessary to join the debtor in order to establish liability against a third party. If the debtor need not be joined as a party, if the third party's liability can be established in the debtor's absence, then the movant may not bring suit against him. [Fn. omitted.] That the debtor would be an important witness in a suit against the third party . . . is not sufficient reason to join him as a party to the suit. The debtor must be a party in whose absence the suit against the third party would be dismissed under applicable tort and procedural laws. [¶] Second, the movant can maintain the negligence action against the debtor only if the debtor bears none of the costs of defense. . . . [¶] The third, most important, and most obvious condition is that the movant may not execute on any judgment he may obtain against the Debtor, either against the Debtor personally or against his assets." (*Id.* at p. 253.)

*Catania* has been cited by other bankruptcy courts that find themselves in analogous situations. In *In re Czuba* (Bankr. D.Minn. 1992) 146 B.R. 225, the debtor was the president of a corporate franchisee, and was accused of sexual harassment by plaintiff. After discharge, plaintiff sought to continue the action against the debtor in order to reach the corporation and the franchisor. The court stated that for the litigation against the debtor to proceed, "the moving party must establish that: [¶] (1) The debtor is a necessary party in the pending litigation and dismissal of the debtor will result in the moving party not being able to pursue its remedies against the non-debtors; [¶] (2) Pursuit of the action with the debtor involved will not impose a financial hardship on the debtor that derogates the sweeping effect of the discharge; and [¶] (3) The parties agree that the modification is confined to establishing liability for damages and does not allow pursuit of a judgment against the discharged debtor." (*Id.* at pp. 228–229.) After reviewing state law concerning necessary parties, the court concluded that the litigation against the debtor would not go forward, since none of the state authorities reviewed by the court "imply that the plaintiff could not pursue an action against only the principal or the agent without joining the other." (*Id.* at p. 230.)

In *In the Matter of McGraw* (Bankr. W.D.Wis. 1982) 18 B.R. 140, another bankruptcy court applied a similar test, but came to the opposite conclusion due to its interpretation of relevant state law. The debtor there was involved in an automobile accident while driving his employer's van and trailer rig. The injured parties and the estates of the deceased brought suit against the debtor and his employer. The issue, according to the court, was whether "[the debtor's] presence as a defendant in creditors' civil suit [is] required for an adjudication of [the employer's] vicarious liability and the apportionment of negligence between the parties." (*Id.* at p. 141.) The court concluded that the question must be answered affirmatively because "[w]ithout [the debtor], the plaintiffs cannot establish the requisites of the *respondeat superior* doctrine, nor can negligence be apportioned among the parties as required [by state law]." (*Ibid.*)

In *In re Pappas* (Bankr. D.Wyo. 1989) 106 B.R. 268, the Federal Deposit Insurance Corporation (FDIC) was permitted to pursue a suit for legal malpractice against a lawyer/debtor in order to reach its malpractice carrier, a situation similar to that in *Forsyth*. The court recited its own version of the three conditions that must be met before the action could proceed: "(1) Where it is necessary to join the debtor to establish liability against a third party; (2) a creditor pays the debtor's reasonable costs of defense, including legal fees and expenses, where those costs and expenses and fees are not borne by a third party; (3) the creditor may not execute on any judgment obtained in the litigation against the debtor personally or against his assets." (*Id.* at p. 271.) Because "[i]n Wyoming it is necessary to establish the liability of an insured before insurer can be held liable," and because the FDIC "agreed to reimburse the debtor his reasonable costs of defense" and also agreed "not to execute on any judgment it may obtain against [debtor] either personally or against his assets," the conditions were met. (*Ibid.*; see also *In re Mann* (Bankr. W.D.Va. 1986) 58 B.R. 953, 958 [where plaintiff sought to maintain action against debtor in order to recover from plaintiff's own uninsured motorist coverage, the court noted: "In order to recover under an uninsured motorist policy [under Virginia law] it is necessary for the insured motorist to establish the liability of the uninsured motorist by judgment"].)

Other bankruptcy courts have not seen the need for this type of analysis. In *In re Peterson* (Bankr. D.N.M. 1990) 118 B.R. 801, the FDIC sought to proceed against a bank officer who had obtained a discharge in order to recover from the bank officer's employer's insurance policy. The court stated that application of the test set forth in *Catania* would be "inappropriate" and concluded that the litigation against the debtor could go forward as long as the debtor's "fresh start" would not be adversely affected by allowing the suit

to continue. (118 B.R. at p. 804.) Although in *Peterson*, the insurance company denied it had a duty to defend, the court noted that the debtor could simply "submit to a default judgment leaving the insurance company to decide whether to defend or submit itself to the same default judgment." (*Ibid.*)

To the same effect was the decision in *In re Greenway* (Bankr. E.D.Tex. 1991) 126 B.R. 253, wherein the debtor was involved in an accident while operating a motor vehicle belonging to his employer. The court saw "no necessity to impose any preconditions on Plaintiff's litigation involving Debtor." (*Id.* at p. 255.) The court did, however, presume that, as in another similar case, "the legal and economic reality of this scenario necessarily requires an insurance company to assume all of the litigation expenses of a debtor faced with this type of litigation." (*Ibid.*)

After review of the relevant authorities, we believe that the court in *Catania* and the cases that followed it expressed a sound rationale for disregarding the bankruptcy discharge and allowing litigation against the debtor to proceed in state court. A party should not be able to continue an action against a debtor in order to reach a third party unless "it is necessary to join the debtor in order to establish liability against [the] third party." (*In re Catania, supra,* 94 B.R. at p. 253.) There is no reason to impose the potential burden of litigation on a discharged debtor unless his or her presence is truly essential. We turn to whether that necessity is present here.

## C

As we have seen, an injured third party must pursue a claim against the debtor to judgment in order to proceed against the debtor's insurer under Insurance Code section 11580. But appellant does not intend to seek recovery from Jensen's insurer; that company has already paid out its policy limits.

When proceeding against a tortfeasor's employer under a theory of respondeat superior, on the other hand, there is no need to first obtain a judgment against the tortfeasor. The employer may be joined in the same action. Alternatively, the plaintiff may proceed solely against the employer, and the injury-causing employee need not be named at all (*Sanderson v. Niemann* (1941) 17 Cal.2d 563, 572 [110 P.2d 1025]; *Mascarin Professional Pharmacy v. Hart* (1970) 13 Cal.App.3d 462, 466 [91 Cal.Rptr. 560]), or may be dismissed while the action is pending as long as the dismissal does not reflect on the merits (*Ellis v. Jewett Rhodes Motor Co.* (1938) 29 Cal.App.2d 395, 397 [84 P.2d 791]). It follows that there is no need to expand *Forsyth*

into the area where a debtor/employee has obtained a bankruptcy discharge and the injured party seeks to recover from the employer on a respondeat superior theory. Despite the employee's dismissal, the injured party may continue his or her action against the employer with the expectation that the employer will pursue its rights against its own insurer if necessary. The fact that in this case, appellant has a statute of limitations problem that precludes suit against Valley Mechanical does not justify creating an expanded exception to bankruptcy discharge law.

■■■ It is important to keep in mind that even were we to agree with appellant's position on pursuing Jensen, at the end of the day, she would have a judgment against "Russell Jensen," not against Valley Mechanical or its insurer. Any attempt to transform a judgment against Jensen into a judgment against Valley Mechanical would suffer from a fundamental due process defect. Appellant claims that *Ikerd v. Warren T. Merrill & Sons* (1992) 9 Cal.App.4th 1833 [12 Cal.Rptr.2d 398] stands for the proposition that a trial court can modify an award to change the name of the party from an individual to a corporation. Properly interpreted, *Ikerd* stands for just the opposite: a judgment cannot be amended to include an individual who is not a party to the action. The case arose from a dispute over three construction contracts. The parties to the contract were Ikerd, the owner of the property, and "Warren T. Merrill & Sons," which was a corporation. The contracts were signed by Warren Merrill, an individual, on behalf of the corporation. When the dispute arose, Ikerd filed a demand for arbitration, naming "Warren T. Merrill & Sons" as respondent. After the arbitration was concluded, the arbitrator asked the parties to brief the issue of whether Merrill should be held personally liable. Ultimately, Merrill was named in the arbitrator's award. The trial court confirmed the award despite the protestation that the arbitrator lacked jurisdiction over Merrill.

The Court of Appeal reversed the order confirming the award as to Merrill based on the simple premise that "[i]n order for a judgment to be entered against a person, he or she must be made a party to the proceeding according to law." (*Ikerd v. Warren T. Merrill & Sons, supra,* 9 Cal.App.4th at p. 1842.) "As both parties agree, Merrill could have been made an individual party to the arbitration and pursued as an agent of an undisclosed principal, but he was not. His name was not included in the original demand nor was any attempt made to add him during the more than three-year period which elapsed from the demand until arbitration hearing was concluded. '. . . [A] person cannot be considered to have been a party to an action at a time before he was named or made a party thereto.' " (*Id.* at pp. 1842–1843, quoting *Grable v. Grable* (1960) 180 Cal.App.2d 353, 359 [4 Cal.Rptr. 353].) The court deemed irrelevant the fact that the corporation had been served, "and

thus [Merrill] had actual knowledge of the proceeding and the nature of Ikerd's claim." (*Id.* at p. 1843.) "Absent an alter ego relationship service on the corporation does not constitute service on the individual shareholder or officer." (*Ibid.*, fn. omitted.)

Similarly here, Valley Mechanical is no longer a party to the litigation. As we have discussed, it was properly dismissed on statute of limitations grounds. Its insurer is even more removed. The issue of whether the insurer of a potentially liable party who was not named in any action could be answerable for damages recovered by an injured third party was discussed in *Fireman's Fund Ins. Co. v. City of Turlock* (1985) 170 Cal.App.3d 988 [216 Cal.Rptr. 796], disapproved in part on another ground in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815 [88 Cal.Rptr.2d 366, 982 P.2d 229]. There, the defendant city had entered into an agreement with a police officer under which the officer was to submit his resignation. The city attorney revealed details of the agreement to the press, and the officer sued the city, claiming that the agreement was confidential. In an action for declaratory relief brought by the city attorney's insurance carrier to determine its potential liability, the city contended that the city attorney "is legally liable under respondeat superior principles to city for the acts in question," that her "acts, errors or omissions formed the basis of the judgment which was rendered on [one of the officer's causes of action]," and that therefore, "[the City Attorney's] policy provides coverage under the insuring agreement to City." (*Fireman's Fund Ins. Co. v. City of Turlock, supra,* at p. 1004.) The court replied: "While [the City Attorney] may be subject to legal liability to City under general respondeat superior principles, that legal liability has not yet been established. Indeed, the record fails to indicate that City has even made a claim against [the City Attorney] for indemnification for the [officer's] judgment. . . . [¶] City is not a named insured nor an additional insured under the terms of the policy. Until such time as a final judgment was entered in favor of City and against [the City Attorney], no cause of action could be maintained by City against [the insurer] on the policy." (*Id.* at p. 1004.)

In the final analysis, if we were to permit appellant to go forward against Jensen, the parties and the court would be engaged in a pointless exercise. The fundamental principles of due process discussed in *Ikerd* would preclude modification of any judgment obtained so that it could be collected from Valley Mechanical or its insurer.

## DISPOSITION

The judgment is affirmed.

Epstein, P. J., and White, J.,* concurred.

A petition for a rehearing was denied May 27, 2005, and on May 12, 2005, the opinion was modified to read as printed above.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.