Filed 6/6/13  McChesney v. Cal. Home Development CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| WILLIAM McCHESNEY, | B237410 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC046691) |
| v. | |
| CALIFORNIA HOME DEVELOPMENT, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Laura Matz, Judge.  Reversed and remanded with directions in part and affirmed in part.

Marla A. Martinez for Plaintiff and Appellant.

L. Douglas Brown for Defendants and Respondents.

_____

Plaintiff and defendants have had a multitude of property-related disputes, which resulted in numerous lawsuits. The instant case went to trial in January 2011. This appeal pertains to two issues: (1) whether an express easement in favor of defendants was terminated by adverse possession, and (2) whether plaintiff has easement rights over defendants' side of a private dirt road. Plaintiff, appellant, contends that the trial court erred by finding an easement over his property effective in favor of defendants, and by finding that he did not have an easement over defendants' half of the private dirt road. We reverse on the first issue and affirm on the second.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff lives at 9949 ½ Wheatland Avenue in Shadow Hills, a property he acquired in 1998. Shadow Hills is an "equestrian area," relatively undeveloped and rural compared to other parts of Los Angeles.

Defendant California Home Development, LLC (CHD), the principal of which is defendant Patrick Wizmann, owns a 17 ½-acre property that surrounds McChesney's property on three sides. CHD purchased its property in 1999. Approximately five to 10 years ago, it attempted to develop a 21-home subdivision on the property, but was stymied by legal challenges.

**The Eastern Border of McChesney's property**

McChesney lives on a rectangular lot of about 27,400 square feet. The southern, western, and northern sides of his property are adjacent to CHD land, as is a small portion of the eastern side. Most of the eastern edge of his property runs contiguous to land owned by a neighbor, Bobby Ross.

McChesney's lot was first created by deed in 1946 by William Ensign, a former owner of the property. That deed expressly provided that the lot would have: "[a]n easement for travel to adjacent property . . . over the east eight (8) feet of the property . . . with as little damage as possible to the ornamental growth thereon." Parcel 29, one of the many lots owned by CHD, lies directly north of this easement. Wizmann testified at trial that the eight-foot easement over McChesney's land was parcel 29's only legal access to nearby streets and that, but for the easement, parcel 29 is "landlocked."

2

McChesney testified that that he uses the eight-foot easement area as one of two driveways for his home.  The driveway is unpaved and is bordered on its western side by tall, mature trees, some of which extend into the driveway, narrowing it at parts.  McChesney shares the driveway along the easement area with his neighbor, Ross.  Ross testified that the area is a "common driveway"—part lying on Ross's property and part on McChesney's—that since 1985 has been utilized by Ross, McChesney, and McChesney's predecessors.  Others were allowed to use the common driveway only if they obtained permission.

In 1998, McChesney had a gate built to block access to the common driveway at its midway point.  He keeps the gate locked to prevent others from using the driveway.  He and Ross have the keys.

**Ensign Drive**

"Ensign Drive" is a private, unpaved dirt road that provides the only access to the McChesney and Ross properties, and also provides access to CHD properties.  It runs east-west along the southern edges of McChesney's and Ross's properties and joins with Wheatland Avenue (a paved City street) at its eastern terminus.  The road is approximately 50 feet wide.  The northern half of the road is owned by McChesney and his neighbors, while the southern half is owned by CHD.

McChesney and various neighbors testified at trial that they and their guests frequently park on both the north and south sides of Ensign Drive.  Wizmann testified that when people park on the southern side of Ensign Drive it poses potential security and liability risks to him, and that it can impede access along the drive.

**The Statement of Decision**

Following trial, the trial court issued a lengthy statement of decision.  The court found that McChesney failed to prove that he had extinguished CHD's eight-foot-wide easement along the eastern edge of his property, because the requisite five-year period for adverse possession was not met.  The court determined that the adverse possession period began to run when McChesney had the gate built blocking the easement in September 1998.  CHD filed a quiet title action in April 2003, less than five years later, and the court

3

found that the lawsuit interrupted McChesney's adverse possession of the easement. Furthermore, McChesney and CHD entered into a settlement agreement resolving the 2003 quiet title action. The court interpreted release language in that settlement agreement as "preserv[ing] express easements," including the eight-foot easement at issue.

The court further held that McChesney has no right to park on the southern side of Ensign Drive, as he had waived his right to do so in the earlier settlement agreement. However, McChesney retained the right to park on the northern side of the drive.

## DISCUSSION

On appeal, McChesney argues that he extinguished CHD's easement over the eastern side of his property through adverse possession and contends that the trial court's decision otherwise is not supported by substantial evidence. McChesney also argues that he has the right to park vehicles on the south side of Ensign Drive. We address each of these issues in turn.

## I. The Eastern Edge of McChesney's Property

McChesney challenges the sufficiency of the evidence supporting the trial court's decision finding no adverse possession. We therefore apply the substantial evidence standard of review. (See *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631.) "Substantial evidence" is not synonymous with "any" evidence, but instead is "evidence of ponderable legal significance . . . that is reasonable, credible and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) "Substantial" refers to the quality, not the quantity, of evidence. (*Ibid*.) "In general, in reviewing a judgment based upon a statement of decision following a bench trial, 'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]' [Citation.]" (*Estate of Young* (2008) 160 Cal.App.4th 62, 75-76.) "We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment. [Citation.]" (*Id.* at p. 76.)

4

The parties do not dispute that the 1946 deed created an express easement over the eastern eight feet of McChesney's property for the benefit of the land now held by CHD. But an easement may be extinguished by adverse possession. "[A]n easement, regardless of whether it was created by grant or use, may be extinguished by the owner of the servient tenement upon which the easement is a burden, by adverse possession thereof by the servient tenement owner for the required statutory period. Perhaps more accurately stated an easement may be extinguished by the user of the servient tenement in a manner adverse to the exercise of the easement, for the period required to give title to land by adverse possession." (*Glatts v. Henson* (1948) 31 Cal.2d 368, 370-371.) Adverse possession is established by continuous, open, and notorious use or possession of a property, hostile to the true owner and under a claim of title, for a period of five years, while paying all taxes levied and assessed against the land during that period. (*Gilardi v. Hallam* (1981) 30 Cal.3d 317, 321; *Taormino v. Denny* (1970) 1 Cal.3d 679, 686.)

Evidence at trial showed that McChesney paid taxes on the disputed property for the time period at issue. The issue was whether the other elements of adverse possession were met. The trial court found that they were not because "McChesney took his property with knowledge that this easement burdened the eastern 8 feet of his lot by virtue of an express grant in the deed, that the easement was not lost due to adverse possession prior to his purchase of the land, that the easement was not destroyed by non-use given no evidence of a manifested intent to abandon it, that his adverse possession was interrupted at 4 years and 7 months, and that he agreed in the Settlement Agreement to preserve express easements."

## A. The back fence

McChesney argues that adverse possession was established over the easement prior to the time he took possession of the property. The trial court found that McChesney built a fence at the back of his property blocking the easement, but that this fence was only built in 1998 and did not exist long enough to establish adverse possession. From the record, it appears that the trial court was mistaken. McChesney and others testified that McChesney simply replaced the fence—that McChesney's

5

predecessor built a fence near the northern boundary blocking the easement well prior to 1998. Although the trial court erred in its recitation of facts, however, this error does not compel reversal. Evidence showed that the fence at issue was built on CHD (and its predecessors') property, not on what is McChesney's property. Since the easement that McChesney sought to have extinguished was located on his own property, not CHD's, the easement could not be impacted by a fence built on CHD's property.

### B. The gate and the prior action

McChesney also argues that the gate he had built in August 1998 established adverse possession. The trial court found that the gate would be sufficient evidence of adverse possession, but that it did not stand long enough to establish the right, as CHD filed a quiet title action in April 2003, less than five years later. The filing of a legal action contesting a property right interrupts the continuous five-year requirement for adverse possession. (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 325; *California Maryland Funding, Inc. v. Lowe* (1995) 37 Cal.App.4th 1798, 1803-1804; *Knoke v. Swan* (1935) 2 Cal.2d 630, 632.) The question, therefore, is whether CHD's 2003 action constituted a contest to McChesney's use of the easement area.

We find that it did not. The complaint filed by CHD in April 2003 was short and simple. It sought quiet title, ejectment, and damages for wrongful detention of real property. The complaint alleged that McChesney claimed an interest in *CHD's property*, the complaint denied that McChesney had any such interest, and the complaint sought to quiet title to CHD's property and to eject McChesney from it. Neither McChesney's own property nor CHD's claim to an easement was alleged to be at issue.

The trial court therefore erred by finding that the filing of this prior action interrupted the period of adverse possession initiated by McChesney in 1998. (See *Miller & Lux, Inc. v. James* (1919) 180 Cal. 38, 49-50 [holding that an action relating to one water appropriation right for a property did not interrupt the statute of limitations relating to another water appropriation right]; see also *Boyer v. Jensen* (2005) 129 Cal.App.4th 62, 69 [filing of complaint causes statute of limitations to be tolled or suspended as to causes of action arising out of the same set of facts alleged in the complaint].)

6

## C.  The settlement agreement

 Since McChesney's continuous use and possession of the easement area was not interrupted by the prior lawsuit, McChesney established adverse possession by August 2003.  However, another basis for the trial court's ruling in favor of CHD was that in 2005 McChesney and CHD entered into a settlement agreement resolving the prior action, which the court found to have "preserve[d] express easements," including the easement along the eastern boundary of McChesney's property.

As support for this finding, the trial court relied on mutual release provisions in the settlement agreement, which read as follows:  "[CHD/McChesney] shall and does hereby generally relieve, release and discharge [McChesney/CHD] . . . and the [McChesney/CHD] Property (except for recorded easements), unequivocally and without reservation, of and from any and all claims, debts, liabilities, demands, obligations promises, acts, agreements . . . actions, claims and causes of action . . . ."  The court noted that no evidence was presented concerning the parties' understanding of the settlement language at the time it was made.  It therefore undertook its own analysis of the "common English-language meaning and the circumstances at the time," and finding that the settlement preserved recorded "easements" (plural), held that it must pertain to the easement along the eastern boundary, one of two recorded easements on the property.

We review de novo the interpretation of contractual language.  (*Applera Corp. v. MP Biomedicals, LLC* (2009) 173 Cal.App.4th 769, 786.)  "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.  (Civ. Code, § 1636.)"  (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264.)  The language of a contract governs its interpretation, if it is clear and explicit.  (Civ. Code, § 1638.)  Words in a contract are generally applied in their ordinary and popular sense.  (Civ. Code, § 1644.)

Pursuant to the relevant language of the settlement agreement, the parties released claims and obligations, except for recorded easements.  If we were to assume, as the trial court did, that at the time the settlement agreement was executed, the easement along the eastern boundary of McChesney's property was still a valid recorded easement, then we

7

may agree with the trial court that the parties intended to preserve the effectiveness of the easement. But, as found above, the easement was extinguished by adverse possession well before the settlement agreement was signed. We must therefore determine whether by placing the statement "except for recorded easements" in the release provisions, the parties intended to revive an already-extinguished recorded easement.

Based on the language of the settlement agreement, we find that they did not. Because the recorded easement was already extinguished, it was irrelevant that CHD and McChesney did not "release" the easement. To make the recorded easement effective, the parties would have had to include language in their settlement agreement or other controlling document indicating an intent to *reestablish* the easement. Nothing indicated such an intent. The phrase "except for recorded easements" certainly did not show an intent to reinstate an easement that was extinguished a year and a half before the agreement was signed.

We thus find that the trial court erred and should have found that McChesney established adverse possession over the eight-foot easement area on the eastern edge of his property. The express easement that previously applied to that area was extinguished in August 2003.

## II. Parking on Ensign Drive

McChesney's second contention on appeal is that the trial court erred by finding he had no easement over CHD's half (the south side) of Ensign Drive and no right to park on CHD's side of the drive. The trial court based its decision on two separate factors: (1) that McChesney failed to produce evidence that he has an express easement over CHD's side of the drive, and (2) that "McChesney waived 'ownership, or the rights to any express or implied easement, license or entitlement to own, use or occupy any portion of the CHD property'" in the parties' settlement agreement.

While McChesney argues in his appellate briefs that he has an easement over CHD's half of the drive, he completely fails to address the trial court's finding that he waived by settlement any right to easement over the southern half of the drive. As such, we treat the issue as abandoned. (See *Kelly v. CB&I Constructors, Inc.* (2009) 179

Cal.App.4th 442, 451-452; *Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1336.) Because waiver by settlement agreement is a sufficient ground to find that McChesney does not have easement rights, we affirm the trial court's decision on this issue.

## DISPOSITION

The judgment is reversed in part and remanded to the trial court with directions to enter an amended judgment in favor of McChesney on the claim relating to adverse possession of the eight-foot easement area on the east side of his property—adverse possession was established and the easement was extinguished. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.