[Civ. No. 10024. First Appellate District, Division One.—December 23, 1936.]

SHELL OIL COMPANY (a Corporation), Appellant, v. FLOYD W. HANCHETT, Respondent.

McCutchen, Olney, Mannon & Greene for Appellant.

J. E. McCurdy for Respondent.

TYLER, P. J.—Action by the Shell Oil Company to recover the sum of $3,294.57 on an unpaid balance for petroleum products sold and delivered for the use of the Green Top Cabs, Ltd. The question involved in the case is whether the cab company alone is liable or whether defendant Hanchett is also liable by reason of certain contracts entered into between the parties. The action is against Hanchett alone, the cab company not being a party. Judgment went in favor of defendant and plaintiff appeals.

The facts show that in February, 1930, defendant Hanchett, who was then manager of a corporation known as the Red Top Cab Company, was organizing a new taxicab business in San Francisco. With this purpose in view he had taken over the Sequoia Garage situated in said city as headquarters for his operations. The new corporation which was being formed was to be known as the Green Top Cabs, Ltd. Before this corporation came into existence, one of plaintiff's salesmen called on Hanchett with a view to obtaining a contract with him for the gasoline and other petroleum products to be used in his business. He ascertained from defendant that he was unwilling to pay a price in excess of twelve cents a gallon for gasoline. At this time plaintiff had a gentlemen's agreement with the other major oil companies not to sell gasoline at less than a certain price, and the amount offered by defendant was below that figure. Plaintiff was particularly anxious to obtain the business but, on account of its gentleman's agreement with the other companies, it

refused to enter into a written contract, but one of the officers of plaintiff corporation, assured defendant that the price would be twelve cents and no more. In order to conceal from competitors the real terms of the transaction, a contract that plaintiff had with the Sequoia Garage was assigned to defendant, the assignment, however, being a mere subterfuge, it being understood that plaintiff was to hold the same in its files as a record of its good faith with the other oil companies in living up to the gentleman's agreement. No deliveries under this assignment are involved in this controversy. Contemporaneously with the execution of the assignment, an oral contract was made between the parties to the effect that defendant was to obtain his gasoline at the favored price of twelve cents a gallon. Deliveries under this contract began to be made and the products were billed to defendant Hanchett personally. The new corporation was subsequently formed and Hanchett insisted that thereafter the billings be against such corporation and not himself personally. This course was thereafter followed by plaintiff. Some time later a gasoline war broke out among the oil companies and as gasoline could be bought at retail from the dealers at a price less than defendant was paying under his contract he demanded and, after considerable discussion, was given a rebate. Thereafter upon the insistence of defendant a written contract was entered into by plaintiff and defendant which expressly provided that defendant personally was to purchase from plaintiff, and to pay for, the total gasoline requirements of his business for a period of three years at twelve cents per gallon. The products sued for were delivered after this written contract was in effect. About this time the Red Top Cab Company, by whom defendant was formerly employed, obtained a restraining order against Hanchett doing business under his newly formed corporation upon the ground that his act in so doing was in violation of his employment agreement with such company. This litigation resulted in the physical properties of the Green Top Cabs, Ltd., being sold and the company was forced out of business and went into bankruptcy. The present action was then brought against Hanchett for the products sold to this bankrupt concern.

Defendant denied liability. His theory of non-liability was predicated upon the oral contract, it being claimed by

him that the only purpose of entering into the written contract was to prevent a dispute over the price he was to pay for gasoline in the event of another gas war among the different oil companies. It was and is plaintiff's position that the clear and unambiguous provisions of the written contract cannot be varied by parol evidence of a prior oral agreement inconsistent therewith. It further claims that even if resort could be had to this contract, defendant would nevertheless be liable for the reason he entered into it before his corporation came into existence and without any agreement that plaintiff was to look only to the corporation for payment.

■ The rule seems to be well settled that a promoter, though he may assume to act on behalf of a projected corporation and not for himself, cannot be treated as an agent of the corporation, for it is not yet in existence; and he would be personally liable on his contract unless there was an agreement to look to the new company, when formed, for payment. (14 Cor. Jur. 269.) ■ Defendant admits this to be true but he testified he had an oral agreement with plaintiff that after the corporation was formed plaintiff would look to it for payment and that his understanding is borne out by the fact that after it was formed the billings were changed from him personally to the new company. Assuming this to be true we fail to see how this fact can bring any comfort to defendant, for certain it is that the oral contract was superseded by the written contract subsequently entered into by defendant with plaintiff under the terms of which defendant agreed for a period of three years to purchase from plaintiff at a fixed price the entire requirements of gasoline to be used in connection with the business. It is true that oral testimony on the part of defendant was offered and received, under objection that it violated the parol evidence rule, to the effect that defendant was to have the right to continue taking the requirements of his business under the prior oral contract, under which his corporation was alone liable, and that he entered into the written contract merely to protect himself in the event of another gas war. While this written contract was undated and there is a decided conflict in the evidence as to the time it was entered into, the evidence shows without conflict that the deliveries here sued upon were had subsequent to its execution. ■ There is nothing contained in the written agreement with reference to a gas war or what

price should be paid in that event, but in unqualified, clear and unequivocal language defendant agreed to be personally liable for all gasoline used in the business. Parol evidence was inadmissible to change the terms of this contract. In the face of his written contract defendant cannot be heard to say that he intended to be bound by it only in a certain event and that the prior oral contract controlled.

Defendant urges the further point that plaintiff is estopped to urge its claim individually against defendant. This alleged estoppel is based upon the fact that plaintiff presented a claim against defendant's bankrupt corporation for the amount due on account of the gasoline in question and participated in a creditors' composition and accepted approximately one-third of the amount of its claim, releasing the corporation for the balance. There might be force in this objection were it not for the fact that defendant entered into a non-prejudice agreement with plaintiff by the terms of which he agreed that such act would not be deemed or construed in anywise to prejudice or affect in any manner whatsoever the present action or operate as a waiver of any rights plaintiff had against defendant on account of the sale and delivery of the products in question.

From what we have said it follows that the judgment should be and it is hereby reversed.

Cashin, J., and Knight, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 18, 1937.