[No. B059236. Second Dist., Div. Three. Oct. 6, 1992.]

LLOYD IKERD, Plaintiff and Appellant, v.
WARREN T. MERRILL & SONS, Defendant and Respondent.

1834

**COUNSEL**

Cayer, Kilstofte & Craton and Stephen R. Kilstofte for Plaintiff and Appellant.

Kaiser, DeBiaso, Palmer & Andrew and Eric C. Demler for Defendant and Respondent.

## OPINION

**CROSKEY, J.**—In this case, the trial court, before finally signing a judgment confirming an arbitration award, modified the designation of the party against whom the award was made, from an individual to a corporation. The appellant, Lloyd Ikerd (Ikerd), appeals from such corrected judgment which modified the award so that it was only against respondent Warren T. Merrill & Sons, Inc. (WTMS), and not against Warren T. Merrill (Merrill), individually. The sole ground for the court's ruling was that there was never any personal jurisdiction over Merrill.

As we are satisfied that this record does not provide any factual or legal basis for the assertion by the arbitrator of personal jurisdiction over Merrill, the trial court's judgment of correcting and then confirming the award should be affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

There is no essential dispute as to the operative facts, and the parties are in practical agreement as to the dispositive issue.

This case arises from one of three construction contracts entered into on September 23, 1985. For reasons not relevant to the issue before us, these contracts bore different execution dates. The contract with which we are concerned was back-dated to December 12, 1984. It was concerned with the performance of construction work to bring a certain building up to earthquake standards.

The parties to the contract were Ikerd, the owner of the property in question, and "Warren T. Merrill & Sons," the name of the contractor as set forth in the agreement. The contract was signed on behalf of the contractor by "Warren T. Merrill." There was no designation appended to such signature as to capacity. However, there is no dispute that Merrill signed on behalf of the described contractor which, in fact, was a corporation.

At the time the contract was signed Ikerd did not know that the contractor was a corporation. Two months later, on November 21, 1985, Ikerd and Merrill signed a document assigning the construction contract to the Bank of America. In that document, Merrill signed as "President" of WTMS. On February 5, 1987, Merrill wrote a letter to Ikerd's attorney which he signed as "President" of "William T. Merrill & Sons." Finally, on February 12, 1987, a WTMS secretary signed a cover letter returning to Ikerd an IRS form 1099 covering payments previously made under the construction contract.

Apparently, that form had described the recipient as an individual rather than as a corporation. This cover letter specifically stated that "William T. Merrill & Sons" was a corporation.[1] Thus, it is clear, and Ikerd concedes, that he had actual knowledge of WTMS's corporate status no later than approximately February 12, 1987.

A dispute arose over the construction work done under the contract and Ikerd, on April 29, 1987, filed a demand for arbitration pursuant to the provisions of paragraph 30 of the agreement.[2] The named respondent was "Warren T. Merrill & Sons," the same name used in the contract. Neither WTMS nor Merrill were then or ever designated as arbitration respondents. The demand was served by mail upon the business address of WTMS, which was the address set forth in the contract. As Ikerd emphasizes, this procedure was the one expressly called for in paragraph 26 of the contract.[3]

A denial and counterclaim to Ikerd's arbitration demand was filed on behalf of WTMS on August 13, 1987.[4] Counsel for WTMS had been retained by its insurers and such counsel never had any authority to appear on behalf of or represent Merrill. Nonetheless, Merrill did appear at and participate in the arbitration proceedings as he was WTMS's principal officer and the person most knowledgeable about its day-to-day business dealings.

The arbitration hearings were conducted before the appointed arbitrator during the period April to August of 1990. During August, while the hearings were still going on, the arbitrator asked the parties to brief the issue of

[1]That letter stated in part:

"Please note, that the recipient's I.D. number used in reporting the compensated amount is Warren's personal social security number, but the recipient is listed as Warren T. Merrill & Sons, *which is a Corporation*. [¶] Please notify the IRS of the correct I.D.#. . . for Warren T. Merrill & Sons." (Italics added.)

[2]Paragraph 30 provides:

"If at any time, any controversy shall arise between Contractor and Owner with respect to any matters in question arising out of, or relating to, this Agreement or the breach thereof, in which the parties do not promptly adjust and determine, said controversy shall be decided by arbitration administered by and in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any court having jurisdiction thereof."

[3]Paragraph 26 provides:

"Any notice required or permitted under this contract may be given by *ordinary mail* at the *address contained in this contract*, but such address may be changed by written notice from one party to the other from time to time. Notice shall be considered received one (1) day after depositing in the mail, postage prepaid." (Italics added.)

[4]Thus, although WTMS had not been specifically named or served with the arbitration demand, its action in filing pleadings and resisting the claim constituted a general appearance.

whether Merrill had signed the contract as the agent of an undisclosed principal (i.e., WTMS) and thus could be held individually liable for the alleged breaches of the agreements. Both sides briefed and argued this issue.[5] ▇▇ ▆▆ Based on these arguments and the evidence presented at the hearing, the arbitrator concluded that Merrill alone was liable to Ikerd[6] in the sum of $146,864.50. This award was composed entirely of contract damages which were based on items included in the agreement which had not been completed. The total amount represented the cost of completion. Merrill's individual liability was premised on the arbitrator's conclusion that having failed to call to Ikerd's attention that he was executing the contract on behalf of his corporation, he was an agent of an undisclosed principal.[7]

Thereafter, Ikerd sought confirmation of the award. Opposition was filed by WTMS in which it was argued that the award should be vacated or corrected because of the arbitrator's lack of jurisdiction over Merrill as an individual. As the record did not disclose the basis of such jurisdiction, the court requested a clarification of the award from the arbitrator. This was provided, but was limited to a discussion of the arbitrator's reasoning process by which individual liability was imposed on Merrill. (See fn. 7, *ante*.) No explanation was provided on the jurisdictional question. As a result, the court concluded it had no "evidentiary or logical basis" in which to vacate or correct the award and, on January 10, 1991, granted the motion to confirm the award.

On January 18, 1991, WTMS filed a motion for reconsideration of the court's confirmation order. At the hearing on this motion, the trial court

---

[5]Ikerd concedes that the theory of "agent of undisclosed principal" was the *only* basis for holding Merrill individually liable under the contract. Alter ego was never an issue. As Ikerd's counsel stated to the trial court, "There was never any allegations regarding alter-ego as this was not at-issue [*sic*] in the arbitration. And personal liability against Mr. Merrill was not sought based on the doctrine of alter-ego."

[6]A contract made by an agent for an undisclosed principal is for most purposes the contract of the principal and it may sue or be sued thereon. (*American Builder's Assn.* v. *Au-Yang* (1990) 226 Cal.App.3d 170, 176 [276 Cal.Rptr. 262].) However, the contracting third party may sue *either* the agent or the principal, but he cannot sue *both*. (2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 109, p. 105.)

[7]In a postaward explanation of this reasoning process, submitted on January 4, 1991, the arbitrator described his conclusion in the following terms: "Based on the evidence at the hearing, I concluded that up to and during the execution of the contracts between Ikerd and Merrill, Mr. Merrill did not disclose or in any way bring home to Ikerd that Mr. Merrill was signing the contract as an agent of a corporate principal; and further, at the time of execution Ikerd did not have any knowledge that he was entering a contract with a corporate entity. [¶] Based on this finding of fact I concluded the law of agency made Mr. Merrill personally bound to Ikerd under the contract. This was based on the legal proposition that when an agent enters a contract on behalf of his principal with another and does not disclose to the other that in signing the contract he is signing as agent, then the agent is personally bound by the . . . contract."

concluded that it was appropriate to seek a second clarification from the arbitrator. As the court put it, "There's no reason for me or for an appellate court to have to start speculating as to what facts caused [the arbitrator] to make the determination that he made. I don't know whether he misperceived the question that was put to him. I thought it was plain but maybe it wasn't plain to him." The court then ordered that a second inquiry be made to the arbitrator.

On January 28, 1991, the arbitrator attempted to directly address the jurisdictional issue. However, his response, in effect, made clear that his jurisdictional authority rested entirely on three conclusions: (1) Merrill had signed an agreement with an arbitration clause, (2) he was personally liable thereon, and (3) he was equally and individually bound by all of the provisions of the contract, including the arbitration clause. The arbitrator provided no factual information regarding the basis for personal jurisdiction over Merrill.[8]

Based on this second response from the arbitrator, the trial court concluded that the arbitrator did not have any basis for asserting jurisdiction over Merrill. It therefore entered an order correcting the judgment by inserting WTMS as the party against whom the award was made and deleting Merrill. As so corrected, the arbitration award was confirmed. Ikerd's subsequent motion for reconsideration was denied and he filed this timely appeal.

## CONTENTIONS OF THE PARTIES

Ikerd raises several arguments. He first emphasizes that the issue of Merrill's capacity was presented to the arbitrator and was resolved. Merrill was found to be an agent for an undisclosed principal and thus personally liable. He next argues that since Merrill executed the contract in a way which made him personally liable, it was *his* contract and that was sufficient

---

[8]The arbitrator's letter made clear his own reasoning process: "Having determined that the contract, even though it may have been intended by Mr. Merrill to be the corporation's, was Mr. Merrill [*sic*] own contract, I determined all the contractual obligations (including the arbitration clause) were Mr. Merrill's obligations individually. Thus, I determined that Mr. Merrill individually obligated himself under the contract to do the work called for and to submit disputes to arbitration. Furthermore, Merrill did presented [*sic*] evidence on this issue and, at my request, a letter brief. [¶] . . . However I did not consider this line of reasoning in making my award; essential [*sic*], I decided that under the circumstances the contract was [Mr.] Merrill's individually and therefore he was obligated to arbitrate under that contract and in fact he did do so. [¶] Beyond this clarification and the one I prepared under the January 4, 1991 date I know of no other means whereby I am able to make any clearer or more explicit [*sic*] the reasoning process I went though in rendering my award against [Mr.] Merrill individually."

to establish the arbitrator's jurisdiction; service and notice requirements were met when the arbitration demand was served as provided in the contract. Finally, Ikerd makes two procedural arguments: (1) WTMS has waived its right to object to jurisdiction for the first time at the confirmation hearings after failing to raise the issue at the arbitration; and (2) WTMS's motion to reconsider was improper because it was directed to a judgment not an order.

WTMS concedes that Merrill signed the contract without disclosing that he was signing in his capacity as president of WTMS; therefore, it is conceded that Merrill was subject to liability as an agent for an undisclosed principal. To put it another way, WTMS does not dispute that both it and Merrill were subject to potential liability for a breach of the construction contract. However, WTMS says that this is wholly beside the point. Ikerd never served Merrill with the demand for arbitration in spite of his actual knowledge that the "party" to the contract was in fact a corporate entity and thus an alternative claim was available against Merrill as an individual. Therefore, the requirements of due process, notice and service were not met and there simply was no jurisdiction over Merrill. Finally, WTMS contends that there is no procedural impediment to the assertion of this fundamental objection.

## DISCUSSION

### 1. *Standard of Review*

We review here the trial court's confirmation of a corrected arbitration award. Code of Civil Procedure section 1286 spells out the power of a court when faced with a confirmation petition. ". . . [T]he court shall confirm the award as made . . . unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding." ██ Our review of an arbitration award requires us to extend to it every intendment of validity and the party claiming error has the burden of supporting his contention. (*Cobler* v. *Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, 526 [265 Cal.Rptr. 868].) Thus, we examine the findings made by the trial judge regarding the absence of jurisdictional facts to determine if they are supported by substantial evidence. (*Tate* v. *Saratoga Savings & Loan Assn.* (1989) 216 Cal.App.3d 843, 853-854 [265 Cal.Rptr. 440].)

Given that it is conceded that Merrill could have been held individually liable as an agent for an undisclosed principal, the only issue which was really presented to the trial court was whether the arbitrator had acquired

personal jurisdiction over him. That is, was he properly made a party to the arbitration? ■ As an arbitration award, once confirmed, leads to a judgment which has the same force and effect as a judgment in a civil action (Code Civ. Proc., § 1287.4), there must be jurisdiction over any person against whom an award is to be made. (Code Civ. Proc., § 1917; *Fazzi v. Peters* (1968) 68 Cal.2d 590, 594 [68 Cal.Rptr. 170, 440 P.2d 242]; *Southern Cal. Pipe Trades Dist. Council No. 16* v. *Merritt* (1981) 126 Cal.App.3d 530, 536 [179 Cal.Rptr. 794].) Ikerd is the one who asserts that such personal jurisdiction did exist; he therefore had the burden of proving such fact during the confirmation process. (*Ward* v. *Superior Court* (1970) 10 Cal.App.3d 1, 4 [88 Cal.Rptr. 726].) We are thus required to examine the trial court's determination that no factual basis existed for such jurisdiction.

### 2. *Basis for Personal Jurisdiction Over Merrill*

■ Personal jurisdiction requires: (1) due process, that is, that there be notice and an opportunity to be heard; and (2) compliance with the statutory jurisdictional requirements of process. (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 80, pp. 450-451.) Put more simply, what is required is due process and service. There must be present a reasonable method of notice and a reasonable opportunity to be heard; actual knowledge of the proceeding alone is not enough. (*Id.*, at pp. 454-455.) In order for a judgment to be entered against a person, he or she must be made a party to the proceeding according to law. (*Bronco Wine Co.* v. *Frank A. Logoluso Farms* (1989) 214 Cal.App.3d 699, 717 [262 Cal.Rptr. 899].)

### a. *Merrill Was Never Served or Made a Party to the Proceeding*

■ A demand for arbitration must be served on the other party. In this case, the "other party" against whom Ikerd sought arbitration was WTMS, although it was described in the contract as "William T. Merrill & Sons." While Ikerd was not informed of its corporate status at the time of contracting, *he was admittedly aware of such fact several months before the arbitration demand was served.* Such undisputed facts clearly support the trial court's ultimate, although implied, conclusion that Ikerd intended to pursue an entity as opposed to an individual.

As both parties agree, Merrill could have been made an individual party to the arbitration and pursued as an agent of an undisclosed principal, but he was not. His name was not included in the original demand nor was any attempt made to add him during the more than three-year period which elapsed from the demand until arbitration hearing was concluded. ". . . [A] person cannot be considered to have been a party to an action at a time

before he was named or made a party thereto." (*Grable* v. *Grable* (1960) 180 Cal.App.2d 353, 359 [4 Cal.Rptr. 353].)

Not only was Merrill never made a party to the proceeding, he was never personally served with the arbitration demand. It was mailed to the business address of WTMS. The failure to serve a demand for arbitration on a person precludes a judgment from being made against that person in a contractual arbitration proceeding. That his corporation had been served, and thus he had actual knowledge of the proceeding and the nature of Ikerd's claim does not matter. Absent an alter ego relationship,[9] service on the corporation does not constitute service on the individual shareholder or officer. (Cf. *MJS Enterprises, Inc.* v. *Superior Court* (1984) 153 Cal.App.3d 555, 558 [200 Cal.Rptr. 286].)

These requirements that a person be named a party and served are fundamental to due process. In the context of this case, only by Ikerd's compliance with these requirements would *proper* notice have been given to Merrill that his personal assets and liability were at stake.

b. *Merrill's Participation in the Arbitration Proceeding Did Not Constitute a General Appearance*

Admittedly, Merrill attended the arbitration hearing and provided substantial assistance to WTMS's defense of Ikerd's claims. However, he necessarily did so as the person most knowledgeable about the relevant facts. Such action by corporate officers or controlling shareholders is common and does not constitute a general appearance in the proceeding. (See, e.g., *Semole* v. *Sansoucie* (1972) 28 Cal.App.3d 714, 723-724 [104 Cal.Rptr. 897]; *Slaybaugh* v. *Superior Court* (1977) 70 Cal.App.3d 216, 224 [138 Cal.Rptr. 628].)

Merrill did not ever file a responsive pleading in the arbitration. During that proceeding, however, the arbitrator requested from the parties legal briefing on the issue of whether Merrill could be held liable to Ikerd as the agent of an undisclosed principal. The submission of this brief, although it related to the issue of Merrill's individual liability, (1) was required by the arbitrator, (2) was a submission made by WTMS, and (3) did not constitute the filing of a voluntary pleading by Merrill. We do not

---

[9]As Ikerd has conceded (see fn. 5, *ante*), there is no claim made herein that Merrill had an alter ego relationship with WTMS.

regard this act as constituting a general appearance. (*Slaybaugh* v. *Superior Court, supra,* 70 Cal.App.3d at p. 224.)[10]

As Merrill was never a party to the arbitration proceedings, we must also reject Ikerd's claim that by his acts of participating as a witness or by the filing of the legal brief there was a waiver of his right to object to the imposition of jurisdiction over him. If he was not formally made a party and, as we hold, these acts did not constitute a general appearance, then there is no basis for a waiver. Indeed, the authority cited by Ikerd does not support him. In *Blatt* v. *Farley, supra,* 226 Cal.App.3d at page 629, the court recognized that a waiver could be made *by a party* who proceeded with the arbitration after knowledge of some substantive or procedural defect to which an objection could have been made but was not. We read this case as applying only to one who is already a *party* to the proceedings. That is not the case here.

### 3. *Reconsideration of the Initial Order Confirming the Award*

The order correcting the arbitration award was made by the trial court upon a motion by WTMS to reconsider the original order which confirmed the award without correction. Ikerd objects to this procedure arguing that the court has no power to reconsider a judgment and a "judgment" is what an order confirming an arbitration award amounts to. Ikerd also contends that WTMS had no standing to seek such reconsideration as it was not affected by the original order which imposed liability not upon it but upon Merrill, individually.

Code of Civil Procedure section 1008 provides that a motion for reconsideration of "*an order*" can be made within ten (10) days. We have no

---

[10]We would also question whether it was even possible for Merrill to be made a party at this late stage of the proceedings by reason of any such conduct. By the time this brief was required by the arbitrator, more than three years had elapsed since the service of the original arbitration demand notice. It has been held (in a nonarbitration case) that the expiration of the three-year period for service of the complaint (Code Civ. Proc., § 583.210) precludes an involuntary general appearance, by conduct, of an unserved defendant. (*Brookview Condominium Owners' Assn.* v. *Heltzer Enterprises-Brookview* (1990) 218 Cal.App.3d 502, 508-509 [267 Cal.Rptr. 76].) A demand for arbitration is a pleading analogous to a complaint in a civil action (*Blatt* v. *Farley* (1990) 226 Cal.App.3d 621, 627 [276 Cal.Rptr. 612]) and the five-year statute (Code Civ. Proc., § 583.310) has been applied to the failure to conduct a timely arbitration hearing. (*Lockhart-Mummery* v. *Kaiser Foundation Hospitals* (1980) 103 Cal.App.3d 891, 896 [163 Cal.Rptr. 325]; *Young* v. *Ross-Loos Medical Group, Inc.* (1982) 135 Cal.App.3d 669, 673-675 [185 Cal.Rptr. 536].) We find persuasive the argument that the three-year statute (Code Civ. Proc., § 583.210) should also apply so as to preclude any subsequent act of Merrill from constituting a general appearance in the pending proceedings. The record reflects that WTMS raised this argument in the trial court and in its brief to this court.

trouble concluding that an order confirming an arbitration award under Code of Civil Procedure section 1286 is an order subject to reconsideration under section 1008. Trial courts routinely make orders which ultimately result in judgments or in other orders which are themselves final and appealable. The most common examples which come to mind are orders granting motions to dismiss for (1) failure to timely prosecute an action, (2) failure to provide ordered discovery, (3) failure to file an amended pleading after being given leave to do so, and (4) failure to state a cause of action. No one doubts that such orders are subject to timely reconsideration. Even an order granting a motion for summary judgment may be reconsidered. (See, e.g., *Thai* v. *Stang* (1989) 214 Cal.App.3d 1264, 1274-1275 [263 Cal.Rptr. 202].) An order of confirmation is very much akin to an order granting a motion for summary judgment. Once confirmation is ordered, a judgment must *then* be entered in conformity therewith. (Code Civ. Proc., § 1287.4.)

Indeed, a contrary rule which prohibited reconsideration of orders which result in judgments would simply promote judicial waste and inefficiency. Trial courts would be prohibited from correcting or modifying orders based on new information not previously considered. An aggrieved party's only recourse would be appeal following entry of the judgment. This is contrary to the established public policy of encouraging resolution of disputes in the trial court if at all possible. (See, e.g., *Rojes* v. *Riverside General Hospital* (1988) 203 Cal.App.3d 1151, 1159 [250 Cal.Rptr. 435].) We thus conclude that the trial court properly acted when it reconsidered its original confirmation order.

■ We also reject Ikerd's argument that WTMS had no standing to seek reconsideration of an order which imposed liability not on it, but rather on its principal officer who acted at all times within the course and scope of his agency. It is immaterial that Merrill's failure to initially disclose his agency might have justified imposition of liability on him.

Code of Civil Procedure section 1008 provides that, "any party *affected* by [an] order" (italics added) is entitled to seek its reconsideration. Under Labor Code Section 2802's provisions for indemnification, any liability imposed on Merrill because of his agency capacity, including litigation costs and expenses, would ultimately be the responsibility of WTMS. Without doubt, WTMS had become a party to the proceedings and we are satisfied that the prospect of resolving Merrill's subsequent indemnification claims for damages paid and costs and fees incurred is sufficient to meet section 1008's minimal affectation test.

## DISPOSITION

The judgment is affirmed. WTMS shall recover its costs on appeal.

Klein, P. J., and Hinz, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 31, 1992.