Filed 3/25/15  Knight v. Rainstorm Pictures CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANTHONY LOMBARD-KNIGHT et al., | B253246 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BS143076) |
| RAINSTORM PICTURES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge.  Affirmed.

Law Offices of Jonathan W. Birdt and Jonathan W. Birdt for Plaintiffs and Appellants.

Scott A. Meehan for Defendant and Respondent.

_____

This appeal involves two agreements to finance the production of motion pictures. Each agreement contained a clause to arbitrate disputes under the rules of a private provider, Judicial Arbitration and Mediation Services (JAMS). When a dispute arose, a JAMS arbitrator issued an award. Plaintiffs asserted in their petition to "confirm" the award that the arbitrator never had personal jurisdiction over them because service was defective under the Hague Service Convention[1] and California law. The parties filed competing summary judgment motions addressing this and other issues regarding the arbitral award. The trial court granted summary judgment in favor of defendant Rainstorm Pictures, Inc. (Rainstorm), because, among other grounds, the undisputed facts demonstrated that plaintiffs' petition was untimely. We agree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**The agreements**

Rainstorm, a California movie production company, entered into two investment agreements. Collectively, the agreements required the "Investor" to provide $300 million to fund the production of 10 motion pictures upon Rainstorm's delivery of performance bonds to the "Investor."

The first agreement, dated December 3, 2010 (December 3 agreement), was between Fortnom & Co. SA (Fortnom) as the "Investor" and Rainstorm. The December 3 agreement was signed on behalf of Rainstorm by its president, Steven Kaplan (Kaplan), and on behalf of Fortnom by Anthony Lombard-Knight (Lombard-Knight), "Director." The December 3 agreement identifies Lombard-Knight as the "'Investor Representative'" and Granville Hodge (Hodge), an attorney in London, as the first alternate representative. The December 3 agreement provides in paragraph 12 that

_____

[1] Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638) (hereafter the Hague Service Convention). A copy of the Hague Service Convention was included in the record as part of Rainstorm's request for judicial notice accompanying its summary judgment motion.

2

all notices required to be in writing are to be sent to the addresses listed in the opening paragraph of the agreement; in the case of Fortnom, that address was 15 Boulevard Roosevelt, L-2450 Luxembourg.

Paragraph 10 of the December 3 agreement contains an agreement to mediate or arbitrate "any controversy, dispute or claim arising out of or relating to this Agreement" before JAMS, "under the rules of the JAMS." Paragraph 11 states that the agreement "shall be governed by, interpreted and enforced in accordance with the internal laws of the State of California and the Federal laws of the United States," and that "[a]ny process in such proceeding may be served by, among other methods, delivering it or mailing it, by registered or certified mail, directed to, as applicable, the Investor's or Rainstorm's address as designated in this Agreement. Any such delivery or mail service shall have the same effect as personal service within the State of California." Paragraph 11 further provides in pertinent part that "the parties hereby submit to the exclusive jurisdiction and venue of the State and Federal courts located in Los Angeles, California with respect to all matters concerning this Agreement, including, without limitation, the enforcement of any arbitration award." Paragraph 12 provides that all notices shall be sent to "the respective addresses of the parties as set forth in the opening paragraph of this Agreement," as well as to Attorney Michael Golland (Golland) at his Beverly Hills address.

The second agreement, dated December 23, 2010 (December 23 agreement) between Rainstorm and Fortnom as the "Investor" contains the same provisions regarding arbitration, choice of law, and service of documents, except that paragraph 12 provides that all notices shall also be e-mailed to Kaplan and Hodge. Lombard-Knight and Jakob Kinde (Kinde) signed the December 23 agreement on behalf of Fortnom, each as "Director," and Kaplan signed on behalf of Rainstorm as president. Once again, Lombard-Knight was designated the "Investor Representative," with Hodge and Kinde as first and second alternate representatives, respectively.

3

The agreements were ill-fated. As it turns out, Fortnom was never formed and did not exist as a separate legal entity at the time the agreements were executed; this fact is significant to the dispute before us. Also, within four months, Kinde and Lombard-Knight contacted the bonding company to instruct it not to deliver the performance bonds—which delivery was the triggering event for their funding of the motion pictures. Not surprisingly, a dispute ensued, causing Rainstorm to invoke the arbitration procedures set forth in the two agreements.

**The arbitration proceedings**

On April 11, 2011, Rainstorm's then counsel, Brian Kabateck (Kabateck), e-mailed to what appears to be Lombard-Knight's personal e-mail account a letter addressed to Lombard-Knight and Fortnom bearing the address in Luxembourg specified in the agreements. In that letter, Kabateck described the above dispute, represented that Fortnom and "its agents" breached the agreements, and gave notice of its intent to bring arbitration proceedings against Fortnom, "its principals, partners **and any individuals who engaged in tortious conduct**."

Rainstorm then filed a demand for arbitration for breach of contract and related tort claims against Fortnom before JAMS on May 27, 2011.[2] The arbitration demand listed the Luxembourg address in the agreements for Fortnom. When Rainstorm learned that Fortnom did not exist, it amended the demands for arbitration on December 14, 2011, and filed and served both plaintiffs with demands for arbitration of its breach of contract claim. Rainstorm alleged in its amended demands that because Fortnom was never formed and did not exist as a separate legal entity, and Kinde and Lombard-Knight had executed the agreements, they were "legally bound to perform the duties set forth in the subject agreements." The arbitration demands were sent to plaintiffs and Hodge by

---

[2] We note that the demand was dated April 11, 2011, but that the arbitrator wrote in his opinion that the demand had been filed on May 27, 2011.

4

registered United States mail to the Luxembourg address listed in the December 3 and December 23 agreements,[3] as well as by e-mail to each plaintiff.

Lombard-Knight and Kinde responded to the demands for arbitration in e-mails in which they asserted that the arbitration was based on a fraud and that the performance bond was a forgery.[4] An exemplar of such an e-mail is Lombard-Knight's January 18, 2012 e-mail to the JAMS case manager in response to the notice, in which Lombard-Knight states that the Rainstorm claim was "fraudulent" and that the performance bond was a "forgery." Kinde sent similar e-mails to the case manager on January 28, 2012, and February 3, 2012, copying Hodge on both e-mails and Lombard-Knight on the February 3, 2012 e-mail. To the same effect was Hector Diaz's (Diaz) February 21, 2012 e-mail to the JAMS case manager, seeking confirmation that the arbitration would be "stopped" because it was "based on a performance bond that is not genuine." Diaz was Lombard-Knight's counsel and had a London mailing address. On February 24, 2012, Kinde wrote the JAMS case manager an e-mail stating that the "documents are forgeries," with copies to Diaz, Hodge, and Lombard-Knight in response to a February 23, 2012 e-mail from the arbitrator informing Kinde that he had to object to the arbitration at the evidentiary hearing and that "the matter will proceed as noticed."

The arbitrator, Richard Chernick, conducted a preliminary conference on December 12, 2011, and an evidentiary hearing on March 5, 2012. The arbitrator stated in his award that the evidentiary hearing had been set pursuant to written notice dated

---

[3] Plaintiffs contend that the demands were sent to a different address than that listed in the two agreements. The proof of service reflects that the demands were mailed as to Kinde and Lombard-Knight to the address in Luxembourg listed in the two agreements, and in addition as to Lombard-Knight to the address of 17 Boulevard Roosevelt, L-2018 Luxembourg.

[4] The record does not appear to contain copies of this correspondence. The only correspondence in the record is a string of e-mails between Hodge and Kinde in June 2011 in which Hodge advises Kinde "to ignore JAMS" and suggests text for a letter to JAMS to the effect that there was no contract between the parties, and, "'[a]ccordingly, the issue of arbitration does not arise.'" We thus rely on the arbitrator's summary of the correspondence in his award.

January 17, 2012. Kaplan, and Rainstorm's experts Phil Fier and Linda Rarey (Rarey) testified at the hearing and three exhibits were received into evidence. Rainstorm submitted three briefs as well. The hearing was not reported and neither plaintiffs nor their counsel attended the hearing.

**The arbitration award**

On March 26, 2012, Arbitrator Chernick issued an award in favor of Rainstorm (Award). The arbitrator found that plaintiffs Lombard-Knight and Kinde had both been served at the Luxembourg address listed in the two agreements, as well as by e-mail, and that Hodge, counsel for Fortnom, had been served at the London address set forth in the Award. In addition, the arbitrator noted that he had received "numerous" e-mails from, or on behalf of, Kinde and Lombard-Knight "protesting the Arbitrator's jurisdiction to proceed" and that the arbitrator took "these e-mails as evidence that these parties in fact had actual notice of the hearing and chose not to appear."

Relying on the testimony of Rainstorm's international finance expert, former FBI Agent Rarey, that there was no record of an entity named Fortnom "or anything close to it," the arbitrator found that at the time the agreements were executed, Fortnom "was not a legal entity." Accordingly, under California law, "when an agent of a disclosed principal signs an agreement on its behalf and the principal has no legal existence, the agent retains responsibility for the performance of the obligations of the putative principal." The arbitrator cited, among other authorities, *Shell Oil Co. v. Hanchett* (1936) 18 Cal.App.2d 240, 243 (*Shell Oil*), for this conclusion.

The arbitrator also found that Lombard-Knight and Kinde "are parties to the agreement and as such are proper parties to the arbitration which was commenced pursuant to the terms of the Agreement," and that Lombard-Knight is "responsible for the performance of Fortnom . . . (and for damages for breach) of both agreements and Kinde is responsible on the same basis for the [December 23] agreement." As additional authority, the arbitrator cited JAMS rule 11(c), giving the arbitrator power to determine

"disputes over the formation, existence, validity, interpretation or scope" of an agreement to arbitrate.

The arbitrator found that in April 2011 Lombard-Knight and Kinde demanded material changes to the agreements, which Rainstorm rejected. They informed Rainstorm that they "had instructed [the bonding company] not to deliver the bonds unless Rainstorm agreed" to their changes. When Rainstorm did not accept the changes, Lombard-Knight and Kinde refused to fund the motion pictures. The arbitrator found that Lombard-Knight's and Kinde's conduct breached the agreements.

The arbitrator ordered Lombard-Knight to pay Rainstorm $13,273,000 as compensatory damages for breach of the December 3 agreement. Lombard-Knight and Kinde were jointly and severally ordered to pay Rainstorm $13,511,000 as compensatory damages for breach of the December 23 agreement. The arbitrator also awarded attorney fees and costs of "this proceeding" jointly and severally against plaintiffs. The Award does not order any damages or other relief against Fortnom.

On July 2, 2012, the Award was served by United States mail and e-mail[5] on Hodge at the London address noted in the Award, on Lombard-Knight and Kinde at 17 Boulevard Roosevelt in Luxembourg, on Kinde at the 15 Boulevard Roosevelt address in the agreements, on Golland at the address set forth in the December 3 agreement, on Diaz at his London address, and on Scott Meehan, Rainstorm's California counsel. On July 9, 2012, a certified copy of the Award was served by United States mail on the parties and their counsel or representatives at the latter addresses as well.

On February 1, 2013, the High Court of Justice, Queen's Bench, Division of the Commercial Court, United Kingdom, granted Rainstorm leave to enter judgment on the Award against Lombard-Knight and Kinde in the amounts found by the arbitrator. The High Court's order states that Lombard-Knight and Kinde had 14 days after service within which to "apply to have this order set aside." Plaintiffs assert that they have

---

[5] As set forth in footnote 6, *post*, JAMS rule 8(e) provides for service by United States mail, among other methods of service.

7

appealed from this order, although Rainstorm disputes this representation. We note that the record does not appear to contain a pleading constituting such an appeal.

**The trial court proceedings**

The trial court observed that the parties' "mutual use of the summary judgment motions to address petitions regarding arbitration awards, is highly unusual." Indeed it was, and it has added some complication upon appellate review, as we discuss below.

**(1) Plaintiffs' petition to confirm award and dismiss parties**

On January 22, 2013, plaintiffs filed what they styled as a petition to *confirm* the Award but dismiss the "individuals named therein for lack of personal jurisdiction." Plaintiffs asserted that the arbitration demands were never amended, and that plaintiffs were never named or served in the arbitration proceedings. They accused Rainstorm of "bypass[ing] the California Courts and seek[ing] to enforce this erroneous Judgment in the United Kingdom."

More specifically, plaintiffs asserted that they were and are residents of the United Kingdom and were never served "with any documents regarding the arbitration, prior to the award, under the Hague convention," which applied to the arbitration proceedings. Plaintiffs requested, seemingly inconsistently, that the trial court "affirm[] the award in part" (albeit they were the only subjects of the Award), but to "dismiss the individuals as they were not parties to the arbitration and were not served in the Arbitration proceeding."

On June 25, 2013, Rainstorm filed a "response to unverified petition," asserting that it had filed and served demands for arbitration before JAMS on Lombard-Knight and Kinde on December 14, 2011, which included the "First Amended Statement of Claims for Breach of Written Contract" and copies of the two agreements. Service was made to the Luxembourg address in both agreements, as well as to plaintiffs' respective e-mail addresses.

8

Rainstorm recounted the service and choice of law provisions of paragraph 10 in the agreements and JAMS rule 8(e),[6] and argued that the parties' agreement regarding manner of service "displace[d]" procedures otherwise required by state or federal law, citing *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, among other legal authority. Rainstorm contended that either individually or through Diaz, their counsel, plaintiffs "submitted various objections and defenses in writing," and that these submissions were recited in the Award itself.

Rainstorm also contended that plaintiffs' petition was untimely because the Award was served on plaintiffs on July 12, 2012, and Code of Civil Procedure[7] section 1288 requires that a petition to correct or vacate an arbitration award to have been served and filed within 100 days after service of the signed award. Plaintiffs filed their petition only in January 2013, past the expiration of the deadline in section 1288. Rainstorm further argued that under section 1297.161 the arbitrator had jurisdiction to rule on his own jurisdiction, "including any objections with respect to the existence of any arbitration agreement." Finally, Rainstorm contended that plaintiffs failed to cite any permissible ground for judicial review of the Award under sections 1286.2 or 1286.6.

**(2) The summary judgment motions**

Instead of waiting for a ruling on the petition, the parties filed competing summary judgment motions, basically making the same arguments that had been asserted in their respective petition and response.

Plaintiffs argued in their summary judgment motion that (1) they were not signatories to either agreement and not bound by their terms, including the arbitration provisions; (2) irrespective of whether they had actual notice, they were not served properly under the Hague Service Convention, which applied to the arbitration proceedings, and cited *Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S.

---

[6] JAMS rule 8(e) provides in pertinent part that "[s]ervice may be made by hand-delivery, overnight delivery service or U.S. mail."

[7] Undesignated statutory references are to the Code of Civil Procedure.

9

694, *In re Alyssa F.* (2003) 112 Cal.App.4th 846, and *Honda Motor Co. v. Superior Court* (1992) 10 Cal.App.4th 1043 for this proposition;[8] and (3) dismissal under section 1287.2 was the proper remedy for a party determined not to be bound by an arbitration.

Rainstorm opposed with the following arguments: (1) plaintiffs' motion was a redux of arguments that had already failed in the United Kingdom when Rainstorm sought to enforce the Award; (2) under *Shell Oil*, *supra*, 18 Cal.App.2d 240, plaintiffs were bound by the agreements as signatories on behalf of a corporation that never existed at the time they executed the agreements on behalf of that corporation; (3) the Hague Service Convention applies to the service of "judicial and extrajudicial documents," defined as documents "emanating from authorities and judicial officers of a Contracting State,"[9] and not to documents in a private contractual arbitration, which was governed by JAMS rules regarding service of documents in the arbitration; (4) plaintiffs' petition was untimely under section 1288; and (5) the arbitrator had jurisdiction to determine his own jurisdiction under section 1297.161,[10] which, under sections 1297.12 and 1297.13, applied because plaintiffs and Rainstorm had their places of business in different countries, and that this jurisdiction included objections to the existence or validity of the arbitration agreement.

---

[8] At oral argument of the summary judgment motions, plaintiffs elaborated that there was a dispute as to whether they were served at all, whether under the Hague Service Convention or other authority, because they were served at the Luxembourg address of a company that Rainstorm contended did not exist and it was undisputed that plaintiffs lived in London. Rainstorm countered at argument that there was no evidence that the address was a "sham" vis-à-vis plaintiffs, to wit, it could have been their business address. Rainstorm argued that the only evidence was that Fortnom never existed, and that plaintiffs were served in accordance with JAMS rules at the addresses set forth in the agreements.

[9] Hague Service Convention, articles 1 and 17.

[10] Section 1297.161 was added to the Code of Civil Procedure pursuant to the enactment of title 9.3, Arbitration and Conciliation of International Commercial Disputes (§§ 1297.11–1297.432). (Stats. 1988, ch. 23, § 1, eff. Mar. 7, 1988.)

Rainstorm's summary judgment motion reiterated the arguments in its opposition to plaintiffs' summary judgment motion. Plaintiffs' opposition repeated the themes of its own motion. While conceding that "an arbitrator could conceivable [*sic*] make the legal finding that Plaintiffs are liable as incorporators," that concession did not relieve the arbitrator of first obtaining personal jurisdiction over plaintiffs and that service on them in Luxembourg at an address of a nonexistent company did not satisfy due process. Plaintiffs relied on *Ikerd v. Warren T. Merrill & Sons* (1992) 9 Cal.App.4th 1833 (*Ikerd*) to argue that the absence of personal jurisdiction that was "fatal" in that case should "leav[e] this [trial] Court with the same result" because plaintiffs were not served under the Hague Service Convention. Plaintiffs also argued that merely signing as directors did not make them parties to the agreements. Finally, plaintiffs contended that Rainstorm should be judicially estopped from asserting any advantage due to Fortnom's nonexistence as a legal corporation because Kaplan and Hodge were responsible for making sure that Fortnom was created. When Kaplan failed to attend his deposition at which plaintiffs could have questioned him in support of their judicial estoppel argument, the trial court had the power to deny Rainstorm's summary judgment motion on the basis of lack of cooperation in discovery under section 437c, subdivision (h).[11]

In its reply, Rainstorm argued that its motion should be granted because plaintiffs did not dispute that their petition was untimely, or that the arbitrator, and not the court, determines personal jurisdiction in an international arbitration under section 1297.161. Further, on the merits, *Shell Oil*, *supra*, 18 Cal.App.2d 240, made plaintiffs individually liable on agreements they signed on behalf of the nonexistent Fortnom. It was

---

[11] Section 437c, subdivision (h) provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due."

11

undisputed that Fortnom never existed as demonstrated by the Hodge declaration, in which he stated that he did not believe that Fortnom had ever been formed. Rainstorm contended that plaintiffs' reliance on *Ikerd*, *supra*, 9 Cal.App.4th 1833, was misplaced because that case did not involve an international arbitration in which, under section 1297.161, the arbitrator decides matters of jurisdiction, as did the arbitrator here. In further contrast to *Ikerd*, plaintiffs here were made parties to the arbitration proceedings when the December 2011 arbitration demands were served on them. Rainstorm repeated the arguments in its other pleadings that the Hague Service Convention did not apply to a private arbitration and that service on plaintiffs had been in compliance with the JAMS rules selected by the parties in the agreements. As to plaintiffs' argument based on section 437c, subdivision (h), Rainstorm countered that plaintiffs had not initiated any discovery in the case, including noticing Kaplan's deposition,[12] and thus Rainstorm could not be penalized for failing to comply with nonexistent discovery.

### (3) The trial court's rulings

On November 19, 2013, the trial court denied plaintiffs' summary judgment motion and granted Rainstorm's competing motion. The trial court ruled, as "an issue of first impression," that the Hague Service Convention did not apply, citing *Yamaha Motor Co., Ltd. v. Superior Court* (2009) 174 Cal.App.4th 264 and section 413.10, subdivision (c). The court ruled that service "in compliance with arbitration law suffices." Therefore, any disputes about service of the arbitration documents were "immaterial."

The trial court further ruled plaintiffs had not demonstrated any statutory ground for vacating or correcting the Award or dismissing them as parties to the Award, and the Award was not "legitimately modifiable" with respect to plaintiffs' contention that they were not signatories to the agreements or individually liable. Accordingly, "courts are required to enter judgment in conformity with the award." The court also concluded that the petition was untimely, apparently treating the petition as one to correct or vacate the

---

[12] Rainstorm contended that Kaplan's deposition had been taken in another case and that he appeared for two sessions of that deposition.

12

Award as to plaintiffs. As noted above, the Award was against only plaintiffs, and not Fortnom, although plaintiffs' counsel erroneously told the trial court at oral argument that there was an "award against Fortnom" and that counsel agreed with the Award. The court denied plaintiffs' request to continue the hearing, finding "that discovery would not be essential in light of immaterial issues raised, and that plaintiffs have had sufficient time in taking depositions and obtaining discovery orders." In its minute order, the court made no mention of the petition itself, other than to note the unusual procedure of addressing a petition regarding an arbitration award via summary judgment motions.

On December 10, 2013, plaintiffs filed a notice of appeal from a "Judgment after an order granting a summary judgment motion." On January 23, 2014, the trial court entered judgment in Rainstorm's favor on its "Motion for Summary Judgment on Petition of plaintiffs," ordered that plaintiffs "take nothing by their Petition as against defendant Rainstorm," and dismissed the petition in its entirety with prejudice.[13]

### DISCUSSION

**Although plaintiffs' notice of appeal was premature, we exercise our discretion to entertain plaintiffs' appeal.**

Rainstorm argues that this court lacks jurisdiction because "there is no judgment in the record and no such judgment existed at the time Knight/Kinde filed their notice of appeal." Rainstorm asserts that plaintiffs misled us in representing in their opening brief's statement of appealability that we had jurisdiction because there was "a final judgment confirming an arbitration award."[14]

As set forth in the preceding part, judgment in fact was entered on January 23, 2014, albeit after plaintiffs filed their notice of appeal. Once entered, the summary judgment was appealable. (§ 437c, subd. (m)(1); Cal. Rules of Court, rule 8.104(c)

---

[13] On May 16, 2014, the trial court "affixed" its award of attorney fees and costs to Rainstorm to the judgment.

[14] We note that plaintiffs did not file a reply brief.

13

[defining entry of judgment].)  An order dismissing a petition to confirm, correct or vacate an arbitration award is also appealable.  (§ 1294, subd. (b).)

The only remaining issue is whether we should exercise our discretion under California Rules of Court, rule 8.104(d) to consider plaintiffs' premature appeal.  We conclude it appropriate to do so here, given the unusual procedures both sides employed in the trial court to present the issues now before us, which could have led to some confusion.  Unlike in *Good v. Miller* (2013) 214 Cal.App.4th 472 (*Good*),[15] on which Rainstorm relies, it does not appear that plaintiffs were trying to mislead the court.  Although plaintiffs' statement of appealability was technically incorrect because no judgment had been entered when they filed their notice of appeal, the trial court ultimately entered summary judgment in favor of Rainstorm, in which it also dismissed the petition to confirm the arbitration award.  Plaintiffs lodged a copy of that judgment on March 26, 2014.

California Rules of Court, rule 8.100(a)(2) counsels us to construe notices of appeal "liberally."  (*Good*, *supra*, 214 Cal.App.4th at p. 475 ["our Supreme Court has held that reviewing courts generally should exercise discretion in favor of preserving the right to appeal"]; *Burlen, LLC v. Wiley* (2014) 230 Cal.App.4th 1039, 1043 [discretion exercised under rule 8.104(d)(2) to consider premature appeal].)  In the interests of justice, we treat plaintiffs' premature appeal as having been filed immediately after entry of the January 23, 2014 judgment.

**Plaintiffs' petition was untimely, and therefore the trial court did not err in dismissing it and entering summary judgment in favor of Rainstorm on that ground.**

In its motion for summary judgment and accompanying separate statement of undisputed facts, Rainstorm contended that the undisputed material facts demonstrated

---

[15] In *Good*, *supra*, 214 Cal.App.4th 472, the appellate court did not exercise its discretion to rescue a premature appeal where the appellant "repeatedly ignored" the issue and "misstated the relevant facts."  (*Good*, at p. 476.)

that plaintiffs' petition was untimely under section 1288. Section 1288 states: "A petition to confirm an award shall be served and filed not later than four years after the date of service of a signed copy of the award on the petitioner. A petition to vacate an award or correct an award shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner." The 100- day period for filing a petition to vacate or confirm is jurisdictional. (*Abers v. Roth* (2013) 217 Cal.App.4th 1199, 1211.)

In support of its summary judgment motion, Rainstorm proffered proof of service of a copy of the Award by regular mail on July 2, 2012, proof of service of a certified copy of the Award by regular mail on July 9, 2012, and its counsel's declaration regarding service of the Award.[16] Calculating the 100-day period in section 1288 from the latter of these two dates, it is apparent that January 22, 2013, the date on which plaintiffs filed their petition, was too late.

In its responsive separate statement, plaintiffs stated, "Plaintiffs first service of Judicial process was in September of 2012 when the [*sic*] received the Arbitration claim form filed in the UK," and referred to their opposing declarations to the same effect. Significantly, they did not dispute that the 100-day deadline in section 1288 applied to their petition, even though they styled their petition as one to confirm. As noted *ante*, there was nothing to confirm because there was no Award against anyone except plaintiffs, and plaintiffs sought in their petition to be excised from that Award. Plaintiffs' opposing memorandum contained no legal discussion regarding Rainstorm's argument based on section 1288, nor did plaintiffs address this issue in their opening appellate brief. Even though Rainstorm raised the timeliness issue again in its appellate brief, plaintiffs did not file any reply.

In Rainstorm's reply memorandum of points and authorities in support of its summary judgment motion, Rainstorm highlighted the absence of any contrary legal

---

[16] Rainstorm made the same argument in opposing plaintiffs' summary judgment motion.

argument in plaintiffs' opposing brief.  Rainstorm argued that, given plaintiffs' admission in their responsive separate statement that plaintiffs had received "service of Judicial process" in September 2012,  plaintiffs' petition was still untimely even assuming that plaintiffs were served on the last day in September 2012.

We review the entry of summary judgment de novo.  (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.)  The issue is thus whether there was a material disputed fact as to whether plaintiffs' petition was untimely.

Although not addressed in the appellate briefing, we observe that section 1013, subdivision (a)[17] can extend by 20 days a deadline for responding to a document where a time period prescribed by a statute or court rule starts running with "service" of the document and the place of service is outside the United States.  Giving plaintiffs the benefit of section 1013, subdivision (a), plaintiffs still failed to demonstrate a disputed material fact to defeat Rainstorm's summary judgment motion on timeliness grounds.

Rainstorm's evidence in support of its summary judgment motion demonstrated that plaintiffs were served with the Award no later than on July 9, 2012, and that therefore, if the 100-day period in section 1288 were extended another 20 days under

---

[17] Section 1013, subdivision (a) provides:  "In case of service by mail, the notice or other paper shall be deposited in a post office, mailbox, subpost office, substation, or mail chute, or other like facility regularly maintained by the United States Postal Service, in a sealed envelope, with postage paid, addressed to the person on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service by mail; otherwise at that party's place of residence.  Service is complete at the time of the deposit, but any period of notice and any right or duty to do any act or make any response within any period or on a date certain after service of the document, which time period or date is prescribed by statute or rule of court, shall be extended five calendar days, upon service by mail, if the place of address and the place of mailing is within the State of California, 10 calendar days if either the place of mailing or the place of address is outside the State of California but within the United States, and 20 calendar days if either the place of mailing or the place of address is outside the United States, but the extension shall not apply to extend the time for filing notice of intention to move for new trial, notice of intention to move to vacate judgment pursuant to Section 663a, or notice of appeal.  This extension applies in the absence of a specific exception provided for by this section or other statute or rule of court."

16

section 1013, subdivision (a), plaintiffs would have had to file their petition to vacate or correct the Award by November 6, 2012.  They failed to do so.

Plaintiffs' evidence that "the first service" they received was "in September of 2012" is of no avail even if section 1013, subdivision (a) applies.  Under a 120-day deadline, plaintiffs' petition would have been untimely if plaintiffs had been served with the Award before September 24, 2012.  Plaintiffs failed to proffer evidence in opposing Rainstorm's summary judgment motion that they were served with the Award on or after September 24, 2012.  As appellants, plaintiffs have the burden to show error below. Plaintiffs did not raise any error regarding the trial court's conclusion that their petition was untimely in their opening brief, and failed to reply to Rainstorm's appellate brief raising that very argument.

Accordingly, we affirm.  (*Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739, 745–746 [this court held that the trial court had no choice but to confirm an arbitral award where an opposing petition to correct or vacate was not timely filed].)  For this reason, we also do not address the other arguments in plaintiffs' appeal.

## DISPOSITION

The judgment is affirmed.  Rainstorm Pictures, Inc., is awarded its costs on appeal. NOT TO BE PUBLISHED.


BENDIX, J.*

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17